OPINION
{¶ 1} Defendant-appellant Bryan S. Hackedorn appeals his conviction and sentence in the Ashland Municipal Court for one count of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree. Plaintiff-appellee is the State of Ohio.
 {¶ 2} On February 27, 2004, Nicole Emmons was at a "BW3" Bar and Restaurant in Ashland, Ohio. Ms. Emmons was at the restaurant with her friend and roommate, Beth Knight and Mike Piatt. Ms. Emmons testified she consumed three large 23 ounce beers, as well as a "shot" of an unspecified type of liquor. The shot had been purchased for her and the other members of her group by appellant, whom she had never met but who was also present at the bar that evening. Ms. Emmons testified that she left the bar at 2:30 a.m. and walked the short distance to her home with her boyfriend. Upon arrival at her residence, she began to get ready for bed.
 {¶ 3} Approximately one-half hour after she had arrived home, Mr. Piatt and Ms. Knight entered the house. Ms. Knight, who was apparently intoxicated, said that there was a man passed out on the front lawn, face down in the snow. Ms. Emmons went outside to find a man she identified as appellant lying on the sidewalk at the bottom of the house steps. At first, Ms. Emmons tried to speak to the appellant. She then shook the appellant in an attempt to awaking him. Ms. Emmons was trying to get the appellant to come inside to warm up and make sure he was alright. At first the appellant did not respond. Appellant then became rigid, stood up, looked at her, called her a "fucking bitch" and punched her in the face. This blow knocked Ms. Emmons to the ground. Thereafter, the appellant got on top of the victim, and punched her several more times in the face. In an attempt to escape, Ms. Emmons pushed the appellant hard; the appellant rolled off the victim. Ms. Emmons ran up a small hill towards her residence. The appellant then grabbed Ms. Emmons' ankle and pulled her back to the ground. At this time, Ms. Emmons was kicking and struggling and the appellant let her go. Ms. Emmons was then able to run inside her residence.
 {¶ 4} Keith Hartsel lived across the street from Ms. Emmons' residence. He testified that he was awake and at home on the morning of February 27, 2004 between 2:30 a.m. and 3:30 a.m. Mr. Hartsel testified he heard people talking outside and that he observed three people "staggering" up the sidewalk across the street, with one of them "tagging along behind." Mr. Hartsel testified that he saw the last person fall down the steps onto the sidewalk, appearing to strike his head on the sidewalk, while the other two individuals went inside the house. After some time passed, during which the person who had fallen lay on the ground, a female came out of the house and attempted to wake him up. Mr. Hartsel related the female "kind of struggled" in attempting to pick up the male, and that "something was being said". Although he could not hear through his closed windows, Mr. Hartsel testified that the man suddenly starting hitting the female, whereupon Mr. Hartsel ran out his front door and yelled to the man to stop. At that point, the man "looked up, got up and ran away."
 {¶ 5} Appellant was originally charged on or about February 27, 2004 with a violation of R.C. 2903.13 (B) assault by recklessly causing physical harm. This charge was later amended to a violation of R.C. 2903.13
(A), assault by knowingly causing physical harm.
 {¶ 6} The case was tried to a jury on June 17, 2004 and appellant was found guilty of the crime of assault in violation of R.C. 2903.13 (A). The trial court deferred sentencing and ordered a pre-sentence investigation report. A sentencing hearing took place on July 13, 2004. Appellant was sentenced to 180 days in jail and a fine of $750. 120 days of the jail sentence were suspended and appellant was placed on probation for a period of one year, with certain conditions. The trial court stayed execution of a sentence pending appeal.
 {¶ 7} Appellant timely appealed and raises the following three assignments of error for our consideration:
 {¶ 8} "I. Defendant-Appellant was denied his right to a fair trial due to prejudicial prosecutorial misconduct.
 {¶ 9} "II. The trial court prejudicially erred by failing to fully instruct the jury on the issues of intoxication and consciousness as they relate to a person's culpable mental state, as set forth in ohio revised code section 2901.21 (c)and (d).
"III. Defendant-Appellant was prejudicially denied the effective assistance of trial counsel."
 I. {¶ 10} In his first assignment of error appellant argues that the prosecutor engaged in misconduct by commenting on his failure to testify. We disagree.
 {¶ 11} In his brief the following comment made by the prosecutor in opening statement is cited as being improper:
 {¶ 12} "Certainly there must be another version of these facts or you folks wouldn't be here called upon to decide Defendant's guilt or innocence." (T. at 54).
 {¶ 13} Appellant further cites the following statement made in closing argument:
 {¶ 14} "I would submit to you that we have met our burden, but we are not the only party in this case that has the opportunity to present evidence to you for your consideration." (T. at 104).
 {¶ 15} During opening statement, counsel is accorded latitude and allowed fair comment on the facts to be presented at trial. See Maggiov. Cleveland (1949), 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912, paragraph two of the syllabus. See, also, e.g., State v. LaMar,95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, at ¶ 126. State v.Leonard (2004), 104 Ohio St.3d 54, 2004-Ohio 6235 at ¶ 157;818 N.E.2d 229, 265-66.
 {¶ 16} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982), 69 Ohio St.2d 583, 589,433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. State v. Maurer
(1984), 15 Ohio St.3d 239, 269, 473 N.E.2d 768. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431.
 {¶ 17} The state may comment upon a defendant's failure to offer evidence in support of its case. State v. Collins (2000),89 Ohio St.3d 524, 733 N.E.2d 1118. "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." Id. at 528-29, 733 N.E.2d 1118. The state must refrain from commenting on a decision not to testify, but the state may challenge the weight of evidence offered by the defense in support of its theory of the case. Id. The state does not have a duty to disprove every possible circumstance suggested by the defendant. Id.
 {¶ 18} "[T]he fact that one of the parties fails to call a witness who has some knowledge of the matter under investigation may be commented upon." State v. Petro (1948), 148 Ohio St. 473, 498, 162, 76 N.E.2d 355,367; State v. Champion (1924), 109 Ohio St. 281, 289-290, 142 N.E. 141,143-144. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193, 1993-Ohio-170, 616 N.E.2d 909,916.
 {¶ 19} In State v. Clemons the Ohio Supreme Court stated; "[t]he comment that the defense did not call an expert to testify that defendant "blacked out" during proceedings is not error. The comment that a witness other than the accused did not testify is not improper, State v.D'Ambrosio (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case. State v. Williams (1986), 23 Ohio St.3d 16, 19-20,23 OBR 13, 16-17, 490 N.E.2d 906, 910-911; State v. Bies (1996),74 Ohio St.3d 320, 326, 658 N.E.2d 754, 760." Clemons, supra,82 Ohio St.3d 438, 452, 1998-Ohio-452, 692 N.E.2d 1009, 1022.
 {¶ 20} The appellant in the case at bar mischaracterizes the prosecutor's statements. The prosecutor was commenting on the lack of evidence and not on the fact that appellant had not testified.
 {¶ 21} Moreover, the trial court instructed the jury that it must decide the case on the evidence and that opening statements and closing arguments are not evidence. (T. at 41; 93; 117). We presume that the jury followed the court's instructions. State v. Loza (1994), 71 Ohio St.3d 61,79, 641 N.E.2d 1082.
 {¶ 22} We find that the language used by the prosecutor in this case is not such that the jury would "naturally and necessarily" take it as comment on the failure of the accused to testify, and thus fails the test set forth in State v. Cooper (1977), 52 Ohio St.2d 163, 370 N.E.2d 725, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3137,57 L.Ed.2d 1157. State v. Williams (1986), 23 Ohio St.3d 16, 20,490 N.E.2d 906, 911.
 {¶ 23} Appellant's First Assignment of Error is overruled.
 II. {¶ 24} In his Second Assignment of Error appellant claims the trial court erred in not giving complete jury instructions. Specifically, appellant contends that it was plain error for the court not to instruct the jury on the so-called "blackout" defense and further that the trial court erred by not using the exact language of the Ohio Jury Instructions (OJI) in defining the "intoxication" defense. We disagree.
 {¶ 25} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Martens (1993), 90 Ohio App.3d 338. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Jury instructions must be reviewed as a whole. State v. Coleman (1988),37 Ohio St.3d 286.
 {¶ 26} Crim.R. 30(A) governs instructions and states as follows:
 {¶ 27} "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.
 {¶ 28} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 {¶ 29} Appellant did not file a written request for specific jury instructions, and did not object to the trial court's jury instructions. The trial court specifically asked trial counsel "Does counsel require any further instructions?" (T. at 126). Both counsel answered in the negative. (Id.).
 {¶ 30} Based upon appellant's failure to proffer instructions or object to the instructions and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine.
 {¶ 31} Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 32} In U.S. v. Dominguez Benitez (June 14, 2004), 124 S.Ct. 2333,159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U.S. 279, 309 — 310 (1991) (giving examples).
 {¶ 33} "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakosv. United States, 328 U.S. 750 (1946). To affect "substantial rights," see 28 U.S.C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." Id. at 2339. See, also, State v. Barnes (2002), 94 Ohio St.3d 21,759 N.E.2d 1240.
 {¶ 34} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004), 101 Ohio St.3d 118,120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to "`prevent a manifest miscarriage of justice.'" State v.Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 35} An essential element of every crime is the defendant's actus reus, or criminal act. This requirement has been codified in R.C. § 2901.21
which states, in pertinent part:
 {¶ 36} "(A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:
 {¶ 37} "(1) His liability is based on conduct which includes either a voluntary act, or an omission to perform an act or duty which he is capable of performing.
 {¶ 38} "(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense." (Emphasis added).
 {¶ 39} For the basis of the "blackout" doctrine, modern courts have cited R.C. 2901.21. Subsection (A) of this statute states that a defendant cannot be found guilty of an offense unless it is shown, inter alia, that his liability is predicated upon conduct which constitutes a voluntary act, and that he had the requisite mental state in committing the act. Subsection (C) (2) then provides that "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts."
 {¶ 40} In addition to the statute, many courts have simply referred to the standard jury instruction for blackout to define the doctrine. SeeState v. Murray (Apr. 18, 1990), Lorain App. No. 89CA004648, unreported, 1990 WL 50165. The instruction provides:
 {¶ 41} "Where a person commits an act while unconscious as in a (coma) (blackout) (convulsion) due to (heart failure) (disease) (sleep) (injury), such act is not a criminal offense even though it would be a crime if such act were the product of a person's (will) (volition)." 4 Ohio Jury Instructions (1989) 62, Section 409.05. State v. LaFeniere
(1993), 85 Ohio St.3d 840, 848, 621 N.E.2d 812,818.
 {¶ 42} Ohio courts have generally concluded that a defendant's claim that his actions were involuntary because he was asleep or unconscious is in the nature of an affirmative defense. State v. LaFreniere supra85 Ohio App.3d at 849; State v. Robinson (May 27, 1986), Montgomery App. No. 9547, unreported; State v. Murray (April 18, 1990), Lorain App. No. 89-CA-004648, unreported. Affirmative defenses include those defenses which are, "peculiarly within the knowledge of the accused." R.C. §2901.05(A) (1). The burden is on the accused to prove an affirmative defense by a preponderance of the evidence. R.C. § 2901.01(A). Whether Appellant met this burden involves the weight and credibility of the evidence, which are primarily for the trier of fact to resolve. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of syllabus. State v.Cloud, 7th Dist. No. 98CO51, 2001-Ohio-3396.
 {¶ 43} Here, however, the offense is not one that could be committed as a result of a blackout. No reflexes, convulsions, or other involuntary bodily movements by appellant could be involved in the conduct described by the witnesses consisting of calling the victim a vulgar name, striking the victim causing her to fall on her back, getting on top of the victim and punching her several more times, grabbing hold of her ankle as she attempted to fight him off and pull her back down onto the ground as the victim was struggling and kicking appellant to finally escape. (T. at 64). The entire assault lasted over two (2) minutes. (Id.). Appellant then fled the scene upon being observed by a neighbor. (Id. at 88-89). Additionally, Appellant presented no medical testimony in support of his affirmative defense to establish that the appellant was in an unconscious state at the time he committed the criminal acts.
 {¶ 44} The offense of which appellant was convicted, assault, is defined by R.C. 2903.13 as consisting of knowingly causing or attempting to cause physical harm to another. There is no question but that the victim suffered physical harm.
 {¶ 45} There simply is no evidence upon which the jury could find that appellant did not act knowingly if the jury concluded that appellant repeatedly punched and struggled with the victim. R.C. 2901.22(B) defines `knowingly' as being aware that `conduct will probably cause a certain result or will probably be of a certain nature.' There simply is no indication in the evidence and no basis upon which a trier of the fact could find that appellant, if he punched and struggled with the victim, was unaware that the punching would cause physical harm to the victim even if appellant was `blacked out.'
 {¶ 46} The trier of fact could have inferred from the remaining circumstantial evidence at trial that Appellant was awake and that his actions were voluntary. The trier of fact may rely on circumstantial evidence and all reasonable inferences arising therefrom in arriving at its verdict. State v. Jenks (1991), 61 Ohio St.3d 259, 265. The fact finder is also free to believe some, all, or none of the testimony of any witnesses. Domigan v. Gillette (1984), 17 Ohio App.3d 228, 229.
 {¶ 47} The victim's testimony is otherwise very specific as to Appellant's actions constituting the offense. (T. at 64). A rationale trier of fact could have found that Appellant's actions were voluntary and that he did not present sufficient evidence to warrant an instruction on unconsciousness. On this basis, the trial court did not commit plain error in failing to instruct the jury on "blackout".
 {¶ 48} Nor can we find plain error in the court's charge to the jury on intoxication. In State v. Fox (1981), 68 Ohio St.2d 53, 56,428 N.E.2d 410, 412, the court stated:
 {¶ 49} "This court first addressed this precise issue in Nichols v.State (1858), 8 Ohio St. 435. In that case Caleb Nichols was tried by jury for attempted murder. On appeal, Nichols claimed, among other errors, the failure of the trial court to instruct that drunkenness should be considered by the jury in determining the existence of the malicious intent charged. After `somewhat anxious deliberation,' we concluded that `a proper regard to the public safety in the practical administration of criminal justice' mandated introduction of the evidence of intoxication, `to show that the accused did not at the time intend to do the act which he did do.' Nichols, supra, at 439. But we refused to require a jury instruction to be given on the question, stating as follows:
 {¶ 50} "`* * * (W) hen we admit evidence of intoxication to rebut * * * a charge of deliberation and premeditation, * * * we think we have gone far enough; and that, looking to the practical administration of the criminal law, a due regard to the public safety requires that the mere question of malice should be determined by the circumstances of the case, aside from the fact of intoxication, as in other cases.' Id.
 {¶ 51} "This court's denial of a right to a jury charge in Nichols was based on a deep seated distrust of the reliability of such evidence:
 {¶ 52} `Intoxication is easily simulated. It is often voluntarily induced for the sole purpose of nerving a wicked heart to the firmness requisite for the commission of a crime soberly premeditated, or as an excuse for such crime." Id. Rather than impose a strict rule of criminal procedure, we left the trial judge with discretion to handle the evidence and submit it to the jurors in the appropriate manner.
 {¶ 53} Subsequent cases decided by this court have recognized the appropriateness of a special jury charge on the effect of intoxication on formation of intent when that issue is properly raised by the evidence. But this court has never found it necessary to promulgate a rule to regulate judges in this matter. Nor is this court well suited to make such a rule. This matter is best left to the discretion of the experienced trial judge."
 {¶ 54} The trial court's instructions is a correct statement of law and does not differ in any material respect with the OJI instruction, i.e. both allow the evidence to show whether or not a person was incapable of performing the criminal act.
 {¶ 55} We find no plain error in the trial court's instruction to the jury on the issue of intoxication.
 {¶ 56} Appellant's Second Assignment of Error is overruled.
 III. {¶ 57} In his Third Assignment of Error, appellant argues that he was denied effective assistance of trial counsel.
 {¶ 58} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136. {¶ 59} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential.Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 60} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 61} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 62} In Florida v. Nixon (2004), 543 U.S. ___, 125 S.Ct.551, the United States Supreme Court refused to find that defense counsel in a capital case was ineffective because he conceded his client's guilt at trial without the client's express consent. Of relevance to this case is the following observation of the Court: "[d]espite Corin's concession, Nixon retained the rights accorded a defendant in a criminal trial. Cf.Boykin, 395 U.S., at 242 — 243, and n. 4 (a guilty plea is `more than a confession which admits that the accused did various acts,' it is a `stipulation that no proof by the prosecution need be advanced'). The State was obliged to present during the guilt phase competent, admissible evidence establishing the essential elements of the crimes with which Nixon was charged . . . Further, the defense reserved the right to cross-examine witnesses for the prosecution and could endeavor, as Corin did, to exclude prejudicial evidence. See supra, at 6. In addition, in the event of errors in the trial or jury instructions, a concession of guilt would not hinder the defendant's right to appeal." 125 S.Ct. at 561.
 {¶ 63} In the case at bar, counsel did not concede his client's guilt; rather he admitted that his client struck the victim. Counsel vigorously argued, however, that his client was not guilty because he did not form the intent to harm anyone. (T. at 55-56; 96-101). In light of the photographic evidence of the injuries to the victim and the testimony of the victim who unequivocally identified the appellant as the person who caused those injuries, we can not say that counsel's trial strategy was prejudicial to the appellant.
 {¶ 64} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland, 466 U.S., at 690,104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court `may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.' Massaro v. United States, 538 U.S. 500, 505,123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843; Kimmelmanv. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986);Strickland, supra, at 689, 104 S.Ct. 2052; United States v. Cronic,466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)." Yarborough v.Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 65} Appellant asserts that trial counsel was ineffective for not cross examining the State's witnesses concerning inconsistencies in the testimony at trial and their statements to the police. Appellant has not indicated the nature of these alleged inconsistencies or provided the witnesses' statements to the police that are alleged to be inconsistent. We will not presume prejudice.
 {¶ 66} Appellant's argument that trial counsel was ineffective for not objecting to testimony that appellant was `highly intoxicated" must also fail.
 {¶ 67} "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated. Columbus v. Mullins (1954), 162 Ohio St. 419, 421, 55 O.O. 240, 123 N.E.2d 422. See, also, State v. McKee (2001),91 Ohio St.3d 292, 296, 744 N.E.2d 737." State v. Schmitt (2004),101 Ohio St.3d 79, 83, 2004-Ohio-37 at ¶ 12, 801 N.E.2d 446, 450.
 {¶ 68} In light of our disposition of appellant's Second Assignment of Error, appellant was not prejudiced by his trial counsel's failure to request a jury instruction on "blackout" or by trial counsel's failure to object to the trial court's instruction on "intoxication."
 {¶ 69} None of the instances raised by appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 70} Appellant's Third Assignment of Error is overruled.
 {¶ 71} The judgment of the Ashland Municipal Court is affirmed.
By Gwin, P.J., Farmer, J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Ashland Municipal Court is affirmed. Costs to appellant.