OPINION
{¶ 1} Defendant-appellant Mark Turnbow appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on two counts of felonious assault; one count of failure to comply with the signal of a police officer; and one count of negligent assault, following a bench trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On September 7, 2004, the Stark County Grand Jury indicted appellant on three counts of felonious assault, in violation of R.C. 2903.11(A), and one count of failure to comply with the signal of a police officer, in violation of R.C.2921.331(B). Appellant entered a plea of not guilty to the charges at his arraignment on September 10, 2004. At a pretrial on October 20, 2004, appellant's trial counsel advised the trial court appellant intended to waive his right to a jury trial. Appellant filed a written waiver of jury trial on November 18, 2004. Before accepting the waiver, the trial court advised appellant of the meaning of the right to a jury trial, and inquired of him to determine if he fully understood and was voluntarily waiving the right.
 {¶ 3} After finding appellant voluntarily, knowingly, and intelligently waived his right to a jury, the matter proceeded to trial. Officer Shawn Peoples of the Canton Police Department testified he was working the 7pm to 7am shift on August 5, 2004, when he observed a silver Ford truck traveling in the wrong direction on Second Street, SE, in Canton, Ohio. Officer Peoples activated the lights on his cruiser and attempted to catch the vehicle. After catching up with the vehicle, the officer used the air horn on the cruiser to get the driver's attention. The driver, who was subsequently identified as appellant, turned north on Cherry Avenue, SE, and then eastbound on East Tuscarawas. Officer Peoples followed behind the vehicle with his lights activated and intermittently hitting the air horn. The officer was able to see the appellant in the left side mirror, and noticed "he looked at me and, you know, he — and he had a smile on his face. I found that kind of strange." Tr. at 25. Officer Peoples called for backup, and continued to follow the truck southbound on Young Avenue, SE. The officer again noticed appellant in the left side mirror, smiling at him. Appellant maintained a rate of speed between 25 and 30 mph, and stopped at every intersection.
 {¶ 4} Officer Michael Lombardi and Michael Walker arrived in car 17. The two cruisers tried to "box the truck in" with Officer Peoples' cruiser in front and car 17 behind. Appellant made an evasive move down an unnamed alley, situated between houses. Officers Lombardi and Walker pursued the vehicle, which was then traveling at a high rate of speed. Officer Peoples had passed the alley and traveled to the corner of Sterling and Third Streets, SE. The silver truck cut across a parking lot, and almost hit Officer Peoples' cruiser. In order to avoid a major accident, Officer Peoples went off the road and onto Third Street, SE, traveling in the wrong direction.
 {¶ 5} Officers Lombardi and Walker continued to pursue the truck. Eventually, the silver truck and both cruisers ended up in the parking lot of a brickyard. Officer Lombardi alighted from the cruiser. Appellant reversed the truck and hit car 17. Officer Lombardi went down. Appellant drove erratically on the loose gravel pavement, kicking up rocks and dust, and came close to hitting Officer Walker, who fired a shot from his weapon.
 {¶ 6} Officer Peoples had exited his cruiser and observed the truck coming at him, fan tailing through the parking lot. As the vehicle approached and passed, Officer Peoples fired two rounds at the truck. Appellant exited the brickyard, traveling in the wrong direction on Third Street, SE. The officers stopped their pursuit as Officer Peoples had previously obtained the license plate number. Per department protocol, because shots had been fired, the officers proceeded to Aultman Hospital for drug and alcohol testing. Officer Lombardi was also treated for swelling, contusions and abrasions to his left knee.
 {¶ 7} The officers traced the truck to appellant's home. At approximately 2:00 am, officers from the Wayne County Sheriff's Department arrived to search the house. Appellant returned home at approximately 6:00 am and the Wayne County officers took appellant into custody for questioning.
 {¶ 8} At the close of the State's evidence, appellant made an oral Crim.R. 29 Motion for Acquittal, which the trial court overruled. Thereafter, appellant testified on his own behalf. Appellant stated he was home on August 5, 2004, working on a porch construction project. He recalled he began drinking that morning with a couple of Jack Daniels and Coca Cola's. The last thing appellant remembered was being in his upstairs office between 3:00 and 4:30 pm. Appellant testified he did not remember anything that occurred from 4:30 pm until 6:30am the following morning, when he was traveling down his street towards his home. Appellant acknowledged his problem with alcohol had progressively worsened over the past six months to year.
 {¶ 9} When appellant returned home, he was met by five Wayne County Sheriff's cruisers. The officers informed him the Stark County Detective Bureau wanted to ask him some questions. Appellant denied any knowledge of the events of the evening, and tried to explain this to the officers. On cross-examination, appellant acknowledged the silver truck the police had pursued and videotaped was his vehicle, but denied being the driver of the vehicle that evening.
 {¶ 10} After hearing all the evidence, the trial court found appellant not guilty of one count of felonious assault with respect to Officer Lombardi, but found him guilty of the lesser included offense of negligent assault. The trial court found appellant guilty of the remaining two counts of felonious assault as well as the one count of failure to comply. The trial court ordered a pre-sentence investigation and scheduled a sentencing hearing for December 22, 2004. The trial court imposed a sentence of five years on each of the felonious assault convictions and ordered the terms to run concurrently. The trial court imposed a term of one year on the failure to comply count, and ordered the term run consecutively to the sentences on the felonious assaults.
 {¶ 11} It is from his convictions and sentence appellant appeals, raising the following assignments of error:
 {¶ 12} "I. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MAINFEST WEIGHT AND SUFFIECIENCY [SIC] OF THE EVIDENCE WHEN THE APPELLANT COULD NOT FORM THE INTENT OF "KNOWINGLY" BECAUSE HE WAS INTOXICATED AND HAD "BLACKED OUT" AT THE TIME OF THE INCIDENT.
 {¶ 13} "II. APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMANTS [SIC] OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSITUTION, BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSITANCE.
 {¶ 14} "III. THE TRIAL COURT ERRED PREJUDICIALLY WHEN IT FAILED TO CONDUCT A PROPER COLLOQY [SIC] AT APPELLANT'S WAIVER OF HIS RIGHT TO A JURY TRIAL."
 I {¶ 15} In his first assignment of error, appellant raises manifest weight and sufficiency of the evidence claims. Appellant maintains he could not have formed the requisite intent to commit felonious assault as he was in an alcohol induced blackout at the time. Appellant further asserts there was insufficient evidence to show he attempted to cause physical harm as none of the police officers were seriously injured.
 {¶ 16} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 17} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 18} R.C. 2903.11(A)(2) defines "felonious assault" as knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordinance. A person acts "knowingly" regardless of his purpose when he is aware his conduct will probably cause a certain result. R.C. 2901.22(B).
 {¶ 19} Voluntary intoxication is not an excuse for the commission of a crime. However, where a specific intent is an essential element of the crime, an accused may argue intoxication rendered him incapable of forming the necessary intent to commit the crime. In State v. Fox (1981), 68 Ohio St.2d 53, the Ohio Supreme Court held evidence of intoxication may be considered to negate an intentional element of the crime, explaining: "The common law and statutory rule in American jurisprudence is that voluntary intoxication is not a defense to any crime. * * * An exception to the general rule has developed, where specific intent is a necessary element, that if the intoxication was such as to preclude the formation of such intent, the fact of intoxication may be shown to negative this element. See 8 A.L.R.3d 1236, Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge. In such a case, intoxication, although voluntary, may be considered in determining whether an act was done intentionally or with deliberation or premeditation. State v. French (1961),171 Ohio St. 501, 502, 172 N.E.2d 613, certiorari denied 366 U.S. 973,81 S.Ct. 1941, 6 L.Ed.2d 1263." Id. at 54-55.
 {¶ 20} In State v. Hackedorn, Ashland App. No. 2004-COA-053, 2005-Ohio-1475, this Court found the trial court's failure to instruct the jury on the "blackout" defense did not constitute plain error, explaining: "`Intoxication is easily simulated. It is often voluntarily induced for the sole purpose of nerving a wicked heart to the firmness requisite for the commission of a crime soberly premeditated, or as an excuse for such crime.' (Citation omitted). Rather than impose a strict rule of criminal procedure, we left the trial judge with discretion to handle the evidence and submit it to the jurors in the appropriate manner." Id. at para. 52.
 {¶ 21} A review of the record reveals appellant drove 30 to 35 miles away from his home in Sterling, Ohio, to Canton, Ohio, traveling at least eight different routes. When police officers signaled him to pull over, he ignored them, continuing to travel at a moderate rate of speed and stopping at every intersection. Further, Officer Peoples testified he saw appellant's reflection in the rear view mirror and noted appellant was smiling as he watched the officer in pursuit. When officers initially questioned appellant after he arrived at his Sterling, Ohio home at 6:00 am on August 5, 2004, he adamantly maintained he did not rob a bank during the same time period in which he could not remember evading the police. We find this is ample evidence from which the trial court could find appellant had the requisite intent. Appellant failed to present sufficient evidence to show he was so intoxicated as to be mentally unable to intend anything. See, State v. Walkup, Morgan App. No. 96CA06, unreported. The fact appellant testified he could not remember the events did not require the trial court, as the trier of fact, to believe appellant. Accordingly, we find the trial court's finding appellant guilty of felonious assault was not against the manifest weight of the evidence.
 {¶ 22} We now turn to appellant's assertion the evidence was insufficient to establish he attempted to cause physical harm to the police officers as none of the officers were seriously injured. Felonious assault is knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordinance. We find the fact appellant did not cause serious physical harm to the officers did not negate his intent to do so or his attempt to do so. The testimony clearly establishes appellant was "chasing" the officers, who were not in their cruisers, with his truck. We find there was sufficient evidence to establish appellant attempted to cause physical harm.
 {¶ 23} Appellant's first assignment of error is overruled.
 II {¶ 24} In his second assignment of error, appellant claims he was denied his right to effective assistance of counsel. Appellant submits trial counsel was ineffective for failing to present expert testimony on an intoxication defense; denying appellant's request to address the trial court; allowing appellant to waive his right to a jury trial; and failing to object to the admission of the videotape recording taken from the cruiser of Officer Peoples.
 {¶ 25} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 26} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,
supra at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, there is a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 27} In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter
(1995), 72 Ohio St.3d 545, 558 (citing Lockhart v. Fretwell
(1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180). Further, both the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, supra at 143 (quoting Strickland,
supra. at 697).
 {¶ 28} With respect to appellant's position trial counsel was ineffective for failing to present expert testimony of the defense of intoxication, we find appellant is unable to establish the second prong of the Strickland test. Appellant has failed to establish in the record before this Court how the testimony of an expert would have proved beneficial to his case. His belief that such testimony would have been beneficial is purely speculative.
 {¶ 29} Although appellant testified during trial, he maintains trial counsel denied him the right to testify on his own behalf. Specifically, appellant refers to his request to "make a statement" to the trial court. Trial counsel advised appellant he was not permitted to address the court. We find trial counsel's informing appellant he could not address the court was nothing more than sound trial strategy and effective control of his client/witness. Defendant testified on his own behalf. Through direct examination, his trial counsel was able to elicit facts beneficial to appellant's case.
 {¶ 30} Appellant next asserts trial counsel was ineffective for allowing him to waive his right to a jury because trial counsel failed to apprise him of all the risks of such waiver. Appellant explains he waived his right to a jury at the insistence of trial counsel and did not understand the ramifications. When appellant advised the trial court of his desire to waive his right to a jury trial, the trial court made a careful inquiry of appellant. Additionally, appellant signed a written waiver of jury trial. The record is devoid of any evidence to establish appellant was unaware of the full effects of such a waiver.
 {¶ 31} Appellant additionally contends trial counsel was ineffective for failing to object to the admission of a videotape recording taken from Officer Peoples' cruiser. An attorney is not ineffective for failing to raise an objection which would have been denied. State v. Gibson (1980), 69 Ohio App.2d 91, 95. Because the videotape was properly admitted, we find trial counsel was not ineffective for failing to object to its admission.
 {¶ 32} Appellant's second assignment of error is overruled.
 III {¶ 33} In his final assignment of error, appellant submits the trial court failed to conduct a proper colloquy with him regarding his waiver of his right to a jury trial, and, as a result, his waiver was not knowingly, intelligently, involuntarily made.
 {¶ 34} Appellant refers to the trial court's failure to advise him he had the ability to participate in the selection of his jury. Prior to the commencement of trial, the trial court conducted the following colloquy with appellant:
 {¶ 35} "THE COURT: The Court has been apprised that you wish to waive your fundamental right guaranteed to you by the Constitution of the United States and the State of Ohio, a right that has been, many lives have been sacrificed to protect, that you want to give up that right, and have this matter tried directly to the Court.
 {¶ 36} "THE DEFENDANT: Yes, sir, I understand. I think.
 {¶ 37} "You're asking me if I understand that I'm giving that up?
 {¶ 38} "THE COURT: Yes.
 {¶ 39} "THE DEFENDANT: Yes, sir.
 {¶ 40} "THE COURT: All right. Now, let's talk about that.
 {¶ 41} "I don't say that to be glib. It is in fact a fundamental right and it is in fact a right that a lot of people have worked hard over the years, many years to preserve and protect in our country and there is a reason for that.
 {¶ 42} "Twelve individuals in our system would be brought in — there would be many brought in, probably be about 35 individuals brought in that are registered voters, whose names were picked randomly. We don't know who they would be, but they would be brought in and they would be in the back of the courtroom, 12 of them would be sitting in the jury box. The Court would ask questions of them, as would the prosecutor and your attorney, all of which questions are being asked to make sure that they can be fair and impartial in this particular case.
 {¶ 43} "The Court gives you, through your attorney, unlimited challenges for cause, because of an opinion they may hold, some relationship they may have to a party, witness or attorney in the case, maybe they are a police officer.
 {¶ 44} "* * *
 {¶ 45} "Ah, but whatever, they, whatever reasons, if it appears on the surface that they couldn't be a good juror, they would be excused for cause.
 {¶ 46} "Over and above that, your attorney would have the right, as would the prosecutor, to exercise what is referred to as four peremptory challenges.
 {¶ 47} "And a peremptory challenge, he doesn't have to give the reason, * * * "So you'd have those challenges.
 {¶ 48} "Finally, you'd end up with a jury of 12 * * * and the trial would commence with the state putting on evidence.
 {¶ 49} "You would not have to put on any evidence. That would be something between you and your attorney. You would not have to testify and the jury would be informed if you did not testify that you have a right to remain silent, you don't have to and they can't consider that for any purpose.
 {¶ 50} "After all the evidence was in from both sides, the Court would instruct them on the law applicable in the case. And then they would go back and deliberate.
 {¶ 51} "And this is a key: All 12 of them would have to agree on the verdict of guilty, or not guilty. All 12. As opposed to a situation where you try it to the Court and I'm not only the, giving law, but I'm then the fact finder as well. * * * and I only have to convince myself and that's a big difference, 1 versus 12.
 {¶ 52} "And, quite frankly, I don't understand why anybody would ever give that up. But they do.
 {¶ 53} "And that's for your attorney and you to decide, but, first of all, do you understand everything I've said?
 {¶ 54} "THE DEFENDANT: Yes, sir, I do.
 {¶ 55} "THE COURT: Do you understand that I've made no promises or representations with regard to this case?
 {¶ 56} "THE DEFENDANT: Yes, sir, I do.
 {¶ 57} "THE COURT: Do you understand that with regard to a felonious assault — and there is three counts of felonious assault, * * *
 {¶ 58} "THE COURT: And one count of failure to comply"
 {¶ 59} "MS. DAVE [PROSECUTOR]: Yes, Your Honor.
 {¶ 60} "THE COURT: And the felonious assaults, because an officer is involved, are felony ones.
 {¶ 61} "* * *
 {¶ 62} "THE COURT: Each of which carries a sentence, a potential sentence of from three to ten years. And the failure to comply, one to five years. Each of those sentences can be run concurrently, at the same time, or consecutively, one after the other.
 {¶ 63} "Do you understand those possible penalties that are involved here?
 {¶ 64} "THE DEFENDANT: Yes, sir, I do.
 {¶ 65} "THE COURT: Have you had plenty of opportunity to think this decision over?
 {¶ 66} "THE DEFENDANT: Yes, I have, Your Honor.
 {¶ 67} "THE COURT: Has anyone pressured you, your attorney pressured you to waive the jury?
 {¶ 68} "THE DEFENDANT: No, sir.
 {¶ 69} "THE COURT: Anybody outside of this courtroom?
 {¶ 70} "THE DEFENDANT: No, sir.
 {¶ 71} "THE COURT: Do you have any questions at all you want to ask your lawyer about this?
 {¶ 72} "THE DEFENDANT: No, I don't think so, Your Honor.
 {¶ 73} "THE COURT: I have before me a document captioned, Waiver of Jury Trial. And over the line for signature of defendant appears the signature of Mark Turnbow.
 {¶ 74} "Is that your signature?
 {¶ 75} "THE DEFENDANT: Yes, sir, it is.
 {¶ 76} "THE COURT: And this is captioned, Waiver of Jury Trial, and it indicates that you voluntarily waive and relinquish you right to a trial by jury and elect to be tried by a Judge of the court * * * and I fully understand under the laws of this state I have a constitutional right to trial by jury.
 {¶ 77} "First of all, you understand what you're doing?
 {¶ 78} "THE DEFENDANT: Yes, sir, I think I do.
 {¶ 79} "THE COURT: Well, now —
 {¶ 80} "THE DEFENDANT: Yes, I understand.
 {¶ 81} "THE COURT: I don't want you to think about it.
 {¶ 82} "THE DEFENDANT: I understand.
 {¶ 83} "THE COURT: It's so basic that I do not want you to do this unless you're absolutely sure this is what you want to do. I believe that strongly in the right to a trial by jury.
 {¶ 84} "THE DEFENDANT: Yes, sir, I do understand.
 {¶ 85} "THE COURT: And it's your decision to waive the jury?
 {¶ 86} "THE DEFENDANT: Yes, I do.
 {¶ 87} "THE COURT: All right. I'm going to accept the waiver of jury trial as having been knowingly and intelligently and voluntarily waived and executed in open court and give it to the bailiff, who will file the same, ah, with the Clerk of Courts." Tr. at 5-12.
 {¶ 88} We find the record demonstrates the trial court carefully informed him of his right to a jury trial and his participation, through his counsel, in the selection of a jury.
 {¶ 89} Appellant's third assignment of error is overruled.
 {¶ 90} The judgment of the Stark County Court of Common Pleas is affirmed.
Hoffman, J. Boggins, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Common Pleas is affirmed. Costs assessed to appellant.