[Cite as *State v. Mobley*, 2011-Ohio-309.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2010-CA-0018 |
| BRYAN L. MOBLEY | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County Court of Common Pleas, Case No. 2009-CR-484D

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     January 26, 2011

APPEARANCES:

For Plaintiff-Appellee

JAMES J. MAYER, JR.
PROSECUTING ATTORNEY
BY: KIRSTEN L. PSCHOLKA-GARTNER
38 South Park Street
Mansfield, OH 44902

For Defendant-Appellant

DAVID HOMER
13 Park Avenue West, Ste. 609
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Defendant-appellant Bryan Mobley appeals his convictions and sentences in the Richland County Court of Common Pleas for attempted aggravated murder, aggravated burglary, felonious assault, and discharging a firearm into a habitation. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} Deborah Tolley and appellant had been married for nearly twenty-five years. The couple had three adult children: Josh, who was in the Army; Caleb, who was living with his father; and Jennifer, who lived in Ashland Ohio with her own family. Deborah had separated from her husband when they argued over him going to Seattle, Washington to look for work. Appellant went to Seattle to look for work as a bricklayer due to the poor local economy. Ms. Tolley was opposed to the separation. Although she was the first to visit a divorce attorney, he actually came back from Seattle and was the one to first file for divorce. On June 18, 2009, appellant and Ms. Tolley had been divorced for approximately six months. Deborah Tolley was in the process of moving from her apartment to her boyfriend's residence.

{¶3} Shortly after 1:00 p.m., appellant drove to Fin, Feather & Fur, a sporting goods store in Ashland, Ohio. After perusing the gun section for a period of time, he purchased a Taurus 9mm handgun and a box of hollow point ammunition. He then visited his daughter and grandchildren. While visiting with his daughter, he learned of his ex-wife's plans to move in with her new boyfriend. This angered him, and, with the loaded gun he had just purchased, he began driving around to find his wife. Appellant first drove by her sister's house, where he thought she might be staying. When he did

not find her there, he drove to her apartment on Piper Road, where Ms. Tolley was packing her belongings.

{¶4} Appellant knocked on the door of his ex-wife's apartment with the loaded gun and a brochure about their son's graduation from boot camp. He planned to use the brochure as a ruse to get Ms. Tolley to open the door. Appellant knocked on the door. Deborah Tolley looked out the peephole and saw appellant with paperwork in his hand. She had not spoken to appellant since the divorce, and did not intend on opening the door on that day because she was afraid of him. Instead, she retreated to the bathroom and called 911.

{¶5} Appellant knew someone was inside because he saw the peephole darken. He became furious that his ex-wife was defying him by refusing to answer the door. As a result, he began firing the gun through the door. Appellant then shot off the doorknob and locking mechanism and forced his way inside.

{¶6} Once inside, he confronted Deborah Tolley in the hallway outside the bathroom, yelling "You fucking whore, you tore our family apart." (T. at 154; 464). Neighbors in the apartment building heard Deborah plead for her life, screaming, "Please no, please don't." (T. at 189-190; 349; 352). Appellant was standing a few feet away from her when he raised the gun and fired one shot. Ms. Tolley raised her hand to defend herself, and as a result, the bullet blew off her thumb and deflected into her abdomen.

{¶7} After she was shot, Deborah pleaded with appellant to take her to the hospital to get some help, telling him that they could talk about their relationship. Appellant told her that if she dropped her cell phone he would take her to the hospital.

Then, with the gun still in his hand, he put his arm around Deborah and walked down three flights of stairs in the apartment building to his car.

{¶8} Suzanne Stark, who lived in one of the first floor apartments, heard appellant telling Deborah, "Just come on, just come on" in an angry tone of voice as he hurried her out of the building. From appellant's tone of voice and the fact that he did not apologize or say it was an accident, Suzanne had the impression that appellant was taking Deborah out of the building to kill her somewhere else. Houston Roose, another neighbor who lived in the building, heard appellant telling Deborah Tolley to get to his car, and Deborah responding that she was going to pass out. Once Deborah was in his car, appellant placed the gun on his lap and proceeded to drive down Piper Road to State Route 545.

{¶9} Deborah's neighbors called 911 to report the shooting, and to give a description of the vehicle and its direction of travel. Coincidently, on that same day, the Violent Fugitive Task Force was in Richland County serving warrants. When the members of the task force heard the dispatch reports regarding the shooting, they immediately responded to the area. When they observed a vehicle matching the description provided, with a female passenger slumped in the front seat and a male driver, they blocked off the roadway and ordered the male occupant out of the car at gunpoint.

{¶10} Appellant stopped the vehicle, but did not comply with the officer's orders to raise his hands. Instead, they saw him reaching toward the floor of the vehicle. When he eventually opened the door, however he made no move to get out of the

vehicle. The officers had to reach into the vehicle and pull him out onto the ground. Appellant struggled with the officers who were attempting to place him in handcuffs.

{¶11} After appellant was restrained, officers looked into the vehicle and found Deborah Tolley bleeding profusely from a gunshot wounds to her abdomen and thumb. The officers also noticed the loaded Taurus 9mm handgun on the floor where appellant had been reaching prior to being removed from the vehicle.

{¶12} Deborah Tolley was rushed to the hospital, where she underwent surgery. As a result of her injuries, a portion of her thumb was amputated, and portions of her small and large intestines were removed.

{¶13} Appellant was transported to the Richland County Jail where he was *Mirandized* and interviewed by Sergeant Donald Zehner of the Richland County Sheriff's Department. Appellant waived his Miranda rights and gave a taped statement in which he admitted to purchasing the gun, forcing his way into Deborah Tolley's apartment, and shooting her. Jeff Shanyfelt was a corrections officer in the Richland County Jail. He testified that appellant came in on suicide watch and that he was focused on whether or not his ex-wife was okay.

{¶14} Appellant was indicted by the Richland County Grand Jury for one count of attempted aggravated murder, one count of attempted murder, one count of kidnapping, one count of aggravated burglary, on count of discharging a firearm into a habitation, and one count of felonious assault. The indictment also contained a three-year firearm specification and a forfeiture specification for the vehicle that appellant drove during the commission of the offenses.

{¶15} On July 29, 2009, appellant's counsel filed a motion indicating that appellant intended to pursue a plea of not guilty by reason of insanity. As a result of that plea, Dr. James Sunbury of the District V Forensic Diagnostic Center evaluated appellant. His August 25, 2009 report indicated that appellant was not suffering from any severe mental disease or defect that would have caused him not to know the wrongfulness of his acts. Appellant was also evaluated by defense expert, Dr. Douglas Lehrer, who reported that although appellant was suffering from a disabling depressive disorder, that disorder did not affect appellant's ability to know the wrongfulness of his acts. As a result of these opinions, the State filed a motion in limine to exclude the defense from presenting expert and lay witness testimony regarding diminished capacity. At a hearing held on the morning of trial, the trial court granted the State's motion with respect to Dr. Lehrer's testimony; however, the court permitted the defense to offer lay witness testimony regarding appellant's state of mind at the time of the shooting.

{¶16} Appellant's trial commenced on January 14, 2010. During the trial, the State presented testimony from fifteen witnesses including the victim, Deborah Tolley, neighbors Suzanne Stark, Brittany Nichols, and Houston Roose, and a video deposition from Dr. Anthony Fahmy, who operated on Deborah Tolley after the shooting.

{¶17} After the State rested on January 20, 2010, the defense began presenting its case.

{¶18} Caleb Mobley, age 20, testified that when his father came back from Seattle, he was very hurt about the broken family. Appellant saw two people for his mental problems, a nurse practitioner and a doctor. He was given prescriptions for his

mental issues. On cross-examination, he stated that both his mother and his father had started seeing other people by the date of the offense.

{¶19} Elaine Brown appellant's sister testified that he was extremely depressed before he left town to go to Seattle and that he was very stressed out due to financial problems. When he came back to Mansfield, he was an emotional wreck. He visited a doctor. Appellant began to see a second doctor and he seemed to be a little better over the next six or eight weeks. Ms. Brown testified, "We actually thought that he was getting better. Not that he wasn't suicidal, but he wasn't so focused on it as much." [T. at 413]. After being in custody for several months, he seemed better, more clear-minded, more like his old self again. [T. at 414].

{¶20} Jennifer Mobley, appellant's daughter testified that when he came back from Seattle, appellant was very depressed, and he got progressively worse. She saw him on the date of the shooting and he was really depressed but not so bad as to give away the fact that he had already bought a gun that day.

{¶21} Appellant's other son, Joshua Mobley, agreed with the other family members' observations about appellant being depressed and financially stressed out, and to the changes in his demeanor when he returned home to Mansfield. He testified, "He just - I mean, he obviously wasn't himself, you know." [T. at 425].

{¶22} Appellant testified on his own behalf. At the time of trial, he was 46 years old. He had graduated high school in Mansfield in 1981, worked for a time in local industry, and became a union bricklayer in 1984, when he married and started a family. By 2008, the business for bricklayers in the Mansfield area became practically non-existent, and he resolved to go to Seattle to find work as a bricklayer, choosing that

locale as one where there was employment. He left with Josh Holland, and a couple of days after he got there, his wife called him and told him she wanted a divorce. He was devastated. Communication with his wife deteriorated, and after several weeks, when his wife called to say she had a prospective buyer for their home, he drove home to Mansfield.

{¶23} When he got home, his wife moved out, and he stayed in the home with the two boys until it sold in September 2008. Appellant testified that he started seeing Dr. Jones for his mental condition, who prescribed him medication, and he did begin sleeping better, but his account fell into arrears, so he had to see another doctor, a Dr. Long, who changed his prescription but continued in the same direction of therapy as the first doctor.

{¶24} On the date in question, appellant started the day by getting a prescription filled. As he put it, "I was feeling like I didn't - didn't have anything to live for." [T. at 441-442]. He went to Fin, Feather & Fur in Ashland, bought the gun, and then went to his daughter's house to see the family. He found out that his ex-wife had started seeing her old high school boyfriend since the divorce and he did not like that, because that man was involved in things of which he did not approve. [T. at 444] He took the Army graduation notice with him and went to his ex-wife's apartment on Piper Road, where he thought he could remember the apartment number. He knocked and when she did not answer the door, he got frustrated:

{¶25} "I feel like I am being defied by my former wife who had been defiant to me for the past year, year and a half any conversation we ever had from the time I left

Washington State has been nothing but derogatory, and condescending. I found myself upset, and I began to fire shots into the door." [T. at 447].

{¶26} He kicked the door in and stumbled inside as if "in a fog." [T. at 448] Appellant testified at times in the third person, "when there was a shot fired," and "when that shot went off." Afterward, his only thought was of getting this woman that he loved to the hospital to receive the proper medical care. [T. at 448-449] He was stopped at the police barricade, where he was removed and put on the ground in a blinding show of authority and administered "a small beating," in his words.

{¶27} At the conclusion of appellant's trial, the jury found appellant guilty of attempted aggravated murder, aggravated burglary, felonious assault, discharging a firearm into a habitation, and both the firearm and forfeiture specifications. The jury found appellant not guilty of the charge of kidnapping.

{¶28} The trial court sentenced appellant to ten (10) years on the attempted aggravated murder charge, ten (10) years on the aggravated burglary charge, one (1) year on the discharging a weapon into a habitation charge, and three (3) years on the firearm specification. These sentences were run consecutive for an aggregate sentence of twenty-four (24) years in prison.

{¶29} It is from this conviction which appellant now appeals, assigning the following errors for review:

{¶30} "I. THE TRIAL COURT ERRED PREJUDICIALLY BY GRANTING THE PROSECUTION'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DEFENSE WITNESS DR. LEHRER, WHO WOULD HAVE TESTIFIED TO

PSYCHOLOGICAL FACTORS RELEVANT TO THE ACCUSED'S MENTAL STATE AT THE TIME OF COMMISSION OF THE ALLEGED CRIMINAL OFFENSES.

**{¶31}** "II. THE TRIAL COURT ERRED PREJUDICIALLY BY EXCLUDING THE DEFENSE EVIDENCE FROM THE JURY'S CONSIDERATION.

**{¶32}** "III. THE TRIAL COURT ERRED PREJUDICIALLY BY IMPOSING SUBSTANTIAL CONSECUTIVE SENTENCES TOTALING 24 YEARS WHEN THERE WAS ONLY ONE SET OF CRIMINAL OFFENSES IN SHOOTING THE VICTIM, NOT A SERIES OF SEPARATE CRIMINAL OFFENSES, AND THE TRIAL COURT FAILED TO CONSIDER THE MENTAL HEALTH ISSUES RAISED BY THE DEFENSE IN MITIGATION OF THE APPELLANT'S CRIMINAL RESPONSIBILITY IN SHOOTING THE VICTIM.

**{¶33}** "IV. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION."

I.

**{¶34}** In his First Assignment if Error, appellant admits that he did not meet the criteria required to pursue a claim of not guilty by reason of insanity. (Appellant's Brief at 8). However, he contends that the defense should have been permitted to call his expert witness, Dr. Douglas Lehrer, to testify regarding his mental state at the time of the shooting in order to negate the *mens rea* necessary to convict him of the crimes charged.

**{¶35}** Appellant further argues the issue was not whether he was insane, but rather, whether he was essentially "unconscious, mentally unable to intend anything, and whether, given his condition and in his circumstance, he acted accidentally or on purpose, or was mentally ill or in a drug-induced stupor, or was any of a thousand things affecting his mental status was a question for the jury." [Appellant's Brief at 12-13].

**{¶36}** An essential element of every crime is the defendant's *actus reus*, or criminal act. This requirement has been codified in R.C. 2901.21, which states, in pertinent part:

**{¶37}** "(A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:

**{¶38}** "(1) His liability is based on conduct which includes either a voluntary act, or an omission to perform an act or duty which he is capable of performing.

**{¶39}** "(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense." (Emphasis added).

**{¶40}** For the basis of the "blackout" doctrine, modern courts have cited R.C. 2901.21. Subsection (A) of this statute states that a defendant cannot be found guilty of an offense unless it is shown, inter alia, that his liability is predicated upon conduct which constitutes a voluntary act, and that he had the requisite mental state in committing the act. Subsection (C)(2) then provides that "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts." See, *State v. Hackedorn*, Ashland App. No. 2004-CA-053, 2005-Ohio-1475 at ¶39.

{¶41} In addition to the statute, many courts have simply referred to the standard jury instruction for blackout to define the doctrine. See *State v. Murray* (Apr. 18, 1990), Lorain App. No. 89CA004648, The instruction provides:

{¶42} "Where a person commits an act while unconscious as in a (coma) (blackout) (convulsion) due to (heart failure) (disease) (sleep) (injury), such act is not a criminal offense even though it would be a crime if such act were the product of a person's (will) (volition)." 4 Ohio Jury Instructions (1989) 62, Section 409.05. *State v. LaFeniere* (1993), 85 Ohio St.3d 840, 848, 621 N.E.2d 812,818.

{¶43} Ohio courts have generally concluded that a defendant's claim that his actions were involuntary because he was asleep or unconscious is in the nature of an affirmative defense. *State v. LaFeniere,* supra, 85 Ohio App.3d at 849; *State v. Robinson* (May 27, 1986), Montgomery App. No. 9547; *State v. Murray* (April 18, 1990), Lorain App. No. 89-CA-004648. Affirmative defenses include those defenses that are, "peculiarly within the knowledge of the accused." R.C. 2901.05(A)(1). The burden is on the accused to prove an affirmative defense by a preponderance of the evidence. R.C. 2901.01(A). Whether a defendant met this burden involves the weight and credibility of the evidence, which are primarily for the trier of fact to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of syllabus. *State v. Cloud*, 7th Dist. No. 98CO51, 2001-Ohio-3396.

{¶44} A defendant may present non-expert testimony in an effort to prove that he was, for example, so intoxicated as to be mentally unable to intend anything ( [i.e.] unconscious) [.] *State v. Wilcox* ( 1982), 70 Ohio St. 2d 182, 194, 24 O.O. 3d 284, 291, 436 N.E. 2d 523, **530**, quoting *State v. Jackson* (1972), 32 Ohio St.2d 203, 206, 61

O.O.2d 433, 434, 291 N.E.2d 432, 433; see, also, *State v. Fox* (1981), 68 Ohio St.2d 53, 22 O.O.3d 259, 428 N.E.2d 410; *State v. Huertas* (1990), 51 Ohio St.3d 22, 27, 553 N.E.2d 1058, 1065. [Quotation marks omitted].

**{¶45}** Here, however, the offenses are not ones that could be committed as a result of a blackout, coma, disease, sleep, or injury. *State v. Hackedorn,* supra at ¶43*.* No reflexes, convulsions, or other involuntary bodily movements by appellant could be involved in the conduct described. Appellant fired a gun through the front door of Deborah Tolley's apartment. He then shot off the doorknob and locking mechanism and forced his way inside. He was standing a few feet away from Deborah when he raised the gun and fired one shot. Appellant told her that if she dropped her cell phone he would take her to the hospital. Then, with the gun still in his hand, he put his arm around Deborah and walked down three flights of stairs in the apartment building to his car. Appellant waived his Miranda rights and gave a taped statement in which he admitted to purchasing the gun, forcing his way into Deborah Tolley's apartment, and shooting her.

**{¶46}** Appellant was not "unconscious." No reflexes, convulsions, or other involuntary bodily movements compelled or contributed to appellant's actions. Rather, appellant's argument suggests something more in the nature of "a functional equivalent" of a diminished-capacity defense.

**{¶47}** Ohio law does not recognize the defense of "diminished capacity." *Wilcox, supra,* paragraph one of the syllabus. Further, except in the mitigation phase, a defendant may not introduce *expert* psychiatric testimony unrelated to the insanity defense for the purpose of showing that due to mental illness, intoxication, or any other reason, he lacked the mental capacity to form the specific mental state required for a

particular crime or degree of crime *Wilcox,* supra*,* 70 Ohio St.2d. at paragraph two of the syllabus; *State v. Fulmer,* 117 Ohio St.3d 319, 883 N.E.2d 1052, 2008-Ohio-936 at ¶ 70; *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895, paragraph one of the syllabus; *State v. Rockwell*, Stark App. No. 2008-CA-00009, 2008-Ohio-2162 at ¶74. Accord, *State v. Huertas* (1990), 51 Ohio St.3d 22, 27, 553 N.E.2d 1058, 1065 (rejecting expert witnesses as to the effect of intoxication).

**{¶48}** Nor can counsel present *expert* testimony to argue "a functional equivalent" of a diminished-capacity defense. *State v. Fulmer*, supra. In cases in which a defendant asserts the functional equivalent of a diminished-capacity defense, the trial court should instruct the jury to disregard the evidence used to support that defense unless the defendant can demonstrate that the evidence is relevant and probative for purposes other than a diminished-capacity defense. *State v. Fulmer,* supra*.*

**{¶49}** In *Fulmer*, the defendant sought to introduce testimony that Mr. Fulmer suffered from a temporary medical condition and because of that medical condition, he could not act "knowingly." Specifically, Fulmer sought to present expert testimony at trial on the potential of an overdose of aspirin to cause metabolic derangement. On cross-examination, defense counsel elicited testimony from Dr. Bligh-Glover that aspirin (i.e., the pills allegedly consumed by Fulmer), when taken in large enough doses, could impair if not kill an individual. Dr. Bligh-Glover testified that an aspirin overdose could change the body's PH level thereby causing a 'metabolic derangement.' Dr. Bligh-Glover stated that when one is under the stress of metabolic derangement, one's brain 'doesn't work right.'" *State v. Fulmer,* Lake App. No. 2005-L-137, 2006-Ohio-7015, 2006 WL 3833870, ¶ 24. The trial judge instructed the jury to disregard this evidence. The

court of appeals reversed concluding that the trial court "overstepped the boundaries of its role by removing uncontested, relevant and probative evidence [about Fulmer's alleged medical condition] from the jury's consideration." *State v. Fulmer,* Lake App. No. 2005-L-137, 2006-Ohio-7015, 2006 WL 3833870, ¶ 30.  The court of appeals remanded the case for a new trial.  Id. at ¶ 34.

{¶50} The Ohio Supreme Court disagreed finding "[t]he court of appeals is patently wrong."  *Fulmer*, 117 Ohio St.3d at 325, 883 N.E.2d at 1058, 2008-Ohio-1052 at ¶ 65.  The Court found, "Ohio law does not permit the jury to consider a defendant's alleged diminished capacity.  Here, Fulmer's counsel suggested 'a functional equivalent' of a diminished-capacity defense.  *State v. Fulmer,* Lake App. No. 2005-L-137, 2006-Ohio-7015, 2006 WL 3833870, ¶ 42 (Westcott Rice, J., dissenting).  It was not proper to do so." *Fulmer*, 117 Ohio St.3d at 325, 883 N.E.2d at 1058, 2008-Ohio-1052 at ¶ 69.

{¶51} In *State v. Shrock,* the appellant proffered expert testimony that he was in a "confused state" at the time of the alleged offenses due to the irregularity of the taking of his medications.  This Court found "confused state" to be a functional equivalent' to "diminished capacity."  *State v. Shrock* (Feb. 19, 1991), Ashland App. No.  CA-968,

{¶52} In the case at bar, after considering all of the relevant arguments and law, the trial court properly concluded:

{¶53} "In this particular case we have had the opportunity to have the defendant examined by a psychologist [of] his choice, or a psychiatrist * * *.

{¶54} "He's been able to say that based on all of the information that's been provided to him, excluding whatever information the man's family could provide to him or other lay witnesses, that he can say he believes Mr. Mobley has a mental disease or

defect but it did not affect his ability to know the wrongfulness of his conduct at the time he committed the act in question. He therefore is not able to render expert opinion evidence that the defendant meets the definition of not guilty by reason of insanity.

{¶55} "Whatever lay witness would be offered at trial would be no different than the lay evidence that was available to this psychologist/psychiatrist at the time he rendered his opinion. These are matters beyond the cant of the ordinary juror, whether a person has a mental disease or defect, and what the [e] affect of that mental disease or defect is on him without the help of expert witnesses which is why I believe it's required by Ohio law.

{¶56} "Consequently, I find that the evidence offered in this case is insufficient to take the issue to the jury."

{¶57} When defense counsel asked for clarification on the trial court's ruling, the court indicated that Dr. Lehrer could not testify because he could not say that appellant did not know the difference between right and wrong. (T. at 18). However, the court indicated that it would permit relevant lay witnesses testimony about the circumstances in which the shooting occurred and appellant's behavior before he went to the victim's apartment. (T. at 19).

{¶58} The application of the *Wilcox* rule in the case at bar has not "significantly undermined fundamental elements of the accused's defense." *United States v. Wong* (6th Cir 1998), 142 F.3d 313, 325. (Citing *United States v. Scheffer,* 523 U.S. 303, ---- - ----, 118 S.Ct. 1261, 1263-64, 140). In the case at bar the trial court did not preclude appellant from introducing any factual evidence; i.e. facts' about the alleged crime at hand. Rather, the trial court precluded appellant from offering *expert* testimony,

unrelated to an insanity defense, to show that he lacked the necessary mental capacity to form the specific mental state required for the crimes. Additionally, the trial court's ruling did not prohibit appellant from testifying in his own behalf; appellant freely chose to do so in this case. *United States v. Wong,* supra. (Citing *See Scheffer,* 523 U.S. at -- -- - ----, 118 S.Ct. at 1268-69). (Internal quotation marks omitted).

{¶59} In the case at bar, the trial court permitted the defense to offer testimony from lay witnesses regarding the circumstances surrounding the shooting and appellant's behavior before he went to the victim's apartment. (T. at 19). In accordance with that ruling, the defense called appellant's co-workers, John Clow and Joshua Holland, his children, Caleb Mobley, Jennifer Mobley, and Joshua Mobley, his sister, Elaine Brown, and Corrections Officer Jeffrey Shanyfelt. Appellant's coworkers, children, and sister testified that appellant was depressed and anxious over his financial situation before he went to Washington to find work, and that his mental state deteriorated further after the divorce, causing him to seek treatment and take medication. (T. at 391-392; 396-397; 400-403; 411-414; 416-418; 422; 424-425). Furthermore, Corrections Officer Shanyfelt testified that when appellant was booked into the jail after the shooting, he was very subdued. As a result, he was placed on suicide watch. (T. at 408-409). Appellant also took the stand and testified about his feelings regarding the divorce, his mental state on the day of the shooting, and the effects of the medication he was taking. (T. at 432-456). Appellant was acquitted of the kidnapping charge based on his own testimony and the testimony of the victim that she had asked him to take her to the hospital, and he intended to drive her to the hospital after he shot her. (T. 155-158, 174-176; 448-451).

{¶60} Appellant's attempt to distinguish this case from *Wilcox* and *Fulmer, supra,* is not persuasive.

{¶61} For the foregoing reasons, appellant's First Assignment of Error is overruled.

II.

{¶62} In his second assignment of error appellant contends the trial court erred by not allowing him to introduce into evidence an audio recording of the preliminary hearing testimony of Sergeant Donald Zehner to impeach Sergeant Zehner's trial testimony. We disagree.

{¶63} Sergeant Zehner testified during the state's case-in-chief. Prior to the appellant's testimony in the case at bar, appellant's trial counsel moved the court to allow him to play the preliminary hearing testimony of Sergeant Zehner "in which he says things different than what he said on the stand with particular reference to he said the guy was depressed, out of it, wasn't acting right. He said the opposite on the stand…." (T. at 430). The trial court allowed appellant to proffer the tape recording; however, the court did not allow appellant to play the recording for the jury. (T. at 431).

{¶64} Generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. Therefore, we will not disturb a trial court's evidentiary ruling unless we find a ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *State v. Adams* (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.

**{¶65}** Evid.R. 607 controls when a witness may be impeached and provides as follows:

**{¶66}** "(A) Who may impeach

**{¶67}** "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid. R. 801(D)(1)(a), 801(D)(2), or 803."

**{¶68}** Evid.R. 613(B) sets forth the procedure to be followed by a party seeking to impeach a witness by his prior inconsistent statements. That rule provides: "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply: (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require; (2) The subject matter of the statement is one of the following: (a) A fact that is of consequence to the determination of the action other than the credibility of a witness * * *." Accordingly, a witness' prior inconsistent statement made at a preliminary hearing is admissible as impeachment evidence if the mandates of Evid.R. 613(B) are followed. *State v. Reyes*, Wood App. No. WD-02-069, 2004-Ohio-2217 at ¶ 51.

**{¶69}** In the case at bar, the extrinsic evidence offered by appellant, i.e. the preliminary hearing testimony of Sergeant Donald Zehner, to prove prior inconsistent statements made by him during his testimony at trial, was only admissible under Evid.R.

613(B) if that evidence demonstrated self-contradiction. For the recording to have been admissible, appellant was required to show that the preliminary hearing testimony of Sergeant Zehner was different from what Sergeant Zehner testified to in trial. Without conflicting or contradicting statements regarding the same facts or matter, there is no inconsistent statement and the extrinsic evidence is properly excluded. *State v. Mack,* supra.

{¶70} An examination of Sergeant Zehner's preliminary hearing testimony[1] and his trial testimony demonstrates that Sergeant Zehner's preliminary hearing testimony was not inconsistent with the statements he made on the witness stand during the trial. Absent a prior inconsistent statement by Sergeant Zehner, the extrinsic evidence of his preliminary hearing testimony was properly excluded.

{¶71} Appellant's Second Assignment of Error is overruled.

III.

{¶72} In his third assignment of error, appellant contends the trial court erred in failing to state its reasoning for imposing the sentences consecutively. Appellant further argues the trial court abused his discretion by imposing an unreasonably harsh sentence. We disagree.

{¶73} We note there is no constitutional right to an appellate review of a criminal sentence. *Moffitt v. Ross* (1974), 417 U.S. 600, 610-11, 94 S.Ct. 2437, 2444; *McKane v. Durston* (1894), 152 U.S. 684, 687, 14 S. Ct. 913. 917; *State v. Smith* (1997), 80

---

[1] A recording of Sergeant Zehner's preliminary hearing testimony was proffered as Defendant's Exhibit B. In that hearing, Sergeant Zehner testified that appellant told him that he had gone to the store to buy the gun with the intention of killing Ms. Tolley and then himself. He further testified that appellant was coherent, was not rambling and that he fully understood his *Miranda* rights. Sergeant Zehner candidly testified that appellant was scared and depressed, and that he, Sergeant Zehner did not normally encounter this type of person. His testimony concerning appellant's "being out of it" related to appellant being depressed having just realized what he had done.

Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668; *State v. Firouzmandi*, 5th Dist No. 2006-CA-41, 2006-Ohio-5823.  An individual has no substantive right to a particular sentence within the range authorized by statute.  *Gardner v. Florida* (1977), 430 U.S. 349, 358, 97 S.Ct. 1197, 1204-1205; *State v. Goggans*, Delaware App. No. 2006-CA-07-0051, 2007-Ohio-1433 at ¶ 28.  In other words "[t]he sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction…It is not the duration or severity of this sentence that renders it constitutionally invalid…."  *Townsend v. Burke* (1948), 334 U.S. 736, 741, 68 S.Ct. 1252, 1255.

{¶74} In the case at bar, appellant concedes that the sentences for each crime were not the maximum possible sentences authorized by law.

{¶75} Recently, the Ohio Supreme Court has held that, "Trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." *State v. Hodge* (Dec. 29, 2010), 2010-Ohio-6320 at paragraph three of the syllabus. The Ohio Supreme Court concluded, "The trial court in this case did not err in imposing consecutive sentences without applying R.C. 2929.14(E)(4) and 2929.41(A), and defendants such as Hodge who were sentenced without application of the statutes are not entitled to resentencing."  Id. at ¶ 40.

{¶76} Accordingly, we find that the trial court properly exercised its discretion in imposing consecutive sentences for the attempted aggravated murder, aggravated burglary, and discharging a firearm into a habitation.  As appellant concedes, those offenses were not allied offenses of similar import.  (Appellant's Brief at 14).  Therefore,

it was within the trial court's discretion to impose consecutive sentences based on separate and distinct acts that were committed as a part of a course of conduct.

**{¶77}** A trial court is vested with discretion to impose a prison term within the statutory range. See *State v. Mathis*, 109 Ohio St.3d 54, 846 N.E.2d 1, 2006- Ohio-855 at ¶ 36. Appellate courts can find an "abuse of discretion" where the record establishes that a trial judge refused or failed to consider statutory sentencing factors. *Cincinnati v. Clardy* (1978), 57 Ohio App.2d 153, 385 N.E.2d 1342; *State v. Goggans*, supra, at ¶ 32. An "abuse of discretion" has also been found where a sentence is greatly excessive under traditional concepts of justice or is manifestly disproportionate to the crime or the defendant. *Woosley v. United States* (1973), 478 F.2d 139, 147. The imposition by a trial judge of a sentence on a mechanical, predetermined or policy basis is subject to review. *Woosley*, supra at 143-145. Where the severity of the sentence shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's can reverse the sentence. *Woosley*, supra at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court abused its discretion in the imposition of sentence in a particular case. *State v. Firouzmandi*, supra at ¶56; State *v. Goggans*, supra, at ¶ 32.

**{¶78}** There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of appellant's case to suggest that

his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.

{¶79} In light of the fact the sentence imposed in the instant action was within the statutory limits, and after review of the entire record in this matter, we conclude the trial court's attitude was not unreasonable, arbitrary, or unconscionable; therefore, we find the trial court did not abuse its discretion in sentencing appellant. *State v. Snook*, supra.

{¶80} Appellant's third assignment of error is overruled.

IV.

{¶81} In his fourth assignment of error, appellant claims that his trial counsel was ineffective because he failed to put forth the defenses that he was either mentally ill or functionally unconscious as a result of the psychoactive medications he was taking, but had discontinued by the time of trial. Further, appellant contends that counsel was ineffective because he failed to pursue an alternative defense that the shooting was accidental, or that it was the result of negligence or recklessness. Appellant also contends that counsel rendered ineffective assistance by failing to file a motion to suppress his statement to Sergeant Zehner. We disagree.

{¶82} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113

S.Ct. 838; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶83}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance* (2009), --- U.S. ----, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251.

**{¶84}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

**{¶85}** "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the

particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064

{¶86} In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶87} Appellant must further demonstrate that he suffered prejudice from his counsel's performance. See, *Strickland*, 466 U. S., at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

{¶88} A decision regarding which defense to pursue at trial is a matter of trial strategy "within the exclusive province of defense counsel to make after consultation with his client." *State v. Murphy*, 91 Ohio St.3d 516, 524, 2001-Ohio-0112. This court

can only find that counsel's performance regarding matters of trial strategy is deficient if counsel's strategy was so "outside the realm of legitimate trial strategy so as 'to make ordinary counsel scoff." 'State *v. Woullard*, 158 Ohio App.3d 31, 813 N.E.2d 964, 2004-Ohio-3395, ¶ 39, quoting *State v. Yarber* (1995), 102 Ohio App.3d 185, 188, 656 N.E.2d 1322. Further, the Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189, citing People v. Miller (1972), 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089; *State v. Wiley*, 10th Dist. No. 03AP-340, 2004-Ohio-1008 at ¶ 21.

### 1. *Mens rea*

**{¶89}** Appellant first contends that trial counsel was ineffective because he did not pursue a defense based upon appellant's mental state at the time of the shooting.

**{¶90}** As noted in our disposition of appellant's First Assignment of Error, appellant was permitted to present evidence of his depression, use of prescription medications and the fact he was being treated by mental health professionals. In other words, appellant was permitted to non-expert testimony in an effort to prove that he was mentally unable to intend anything. Appellant was not permitted, as we have explained in our disposition of appellant's First Assignment of Error, supra, to present *expert* testimony on this issue.

**{¶91}** As we have found no error in our disposition of appellant's First Assignment of Error, we find appellant has failed in his burden to demonstrate "counsel's representation fell below an objective standard of reasonableness" and further that he suffered prejudice from his counsel's performance.  See, *Strickland*, 466 U. S., at 688; 691, 104 S.Ct. at 2064.

2. Failure to File Motion to Suppress.

**{¶92}** Initially we note appellant has failed to properly brief this issues on appeal. In the case at bar, appellant merely states, "The defense did not move to suppress the defendant's statements while in custody prior to trial."  [Appellant's Brief at 19].

**{¶93}** App.R. 16(A)(7) states that an appellant shall include in his brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contention, with citations to the authorities, statutes and parts of the record on which appellant relies." In this case, appellant has wholly failed to present any specific argument concerning trial counsel's failure to file a motion to suppress and further has failed to cite the portions of the trial court record which support his burden to demonstrate that such a motion, if filed, would have been granted.

**{¶94}** "It is the duty of the appellant, not this court, to demonstrate [his] assigned error through an argument that is supported by citations to legal authority and facts in the record."  *State v. Taylor* (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3.  See, also, App.R. 16(A) (7).  "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate

courts is a tactic which is ordinarily fatal." *Kremer v. Cox* (1996), 114 Ohio App.3d 41, 60, 682 N.E.2d 1006.

**{¶95}** The failure to file a suppression motion does not constitute per se ineffective assistance of counsel. *Kimmelman v. Morrison* (1986), 477 U.S. 365, 384, 106 S.Ct. 2574. Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted. *State v. Butcher*, Holmes App.No. 03 CA 4, 2004-Ohio-5572, ¶ 26, citing *State v. Robinson* (1996), 108 Ohio App.3d 428, 433, 670 N.E.2d 1077.

**{¶96}** Nothing prohibits a suspect charged with a crime from voluntarily choosing to speak with police officials without an attorney present. *Michigan v. Harvey* (1990), 494 U.S. 344, 352, 110 S.Ct. 1176. In the case at bar, there is no evidence in the record to support appellant's conclusion that the evidence would have established that the statement made by him to police officers was involuntary or in derogation of his Sixth Amendment rights to counsel.

**{¶97}** Sergeant Zehner, who took the statement from appellant at the jail following his arrest, testified that appellant was "very familiar with" and understood his *Miranda* rights. (T. at 251). Sergeant Zehner also testified that appellant knew that he had a recorder and was more than willing to talk to him. (T. at 251). Furthermore, Sergeant Zehner testified that appellant did not appear to be in a daze. When asked if appellant appeared to understand what was said to him, Sergeant Zehner responded "[o]h, absolutely." (T. at 254).

**{¶98}** In *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473, the court held that "police over-reaching" is a prerequisite to a finding of

involuntariness. Evidence of use by the interrogators of an inherently coercive tactic (*e.g.,* physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis. *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854.

{¶99} The standard is whether, by reason of intoxication or other factor, defendant's "will was overborne" or whether his statements were the "product of a rational intellect and a free will." *Townsend v. Sain* (1963), 372 U.S. 293, 307, 83 S.Ct. 745, 754. In that case, a police physician had given Townsend a drug with truth-serum properties. 372 U.S., at 298-299, 83 S.Ct. at 749-750. The subsequent confession, obtained by officers who knew that Townsend had been given drugs, was held involuntary. See *Moran v. Burbine,* 475 U.S. at 421, 106 S.Ct., at 1141 ("[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.... [T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements"); *Fare v. Michael C.,* 442 U.S. 707, 726-727, 99 S.Ct. 2560, 2572-2573, 61 L.Ed.2d 197 (1979) (The defendant was "not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit.... The officers did not intimidate or threaten respondent in any way. Their questioning was restrained and free from the abuses that so concerned the Court in *Miranda*"). *Colorado v. Connelly*, supra, at 167, 170, 107 S.Ct. 522-23.

{¶100} In the cause *sub judice,* the appellant does not assert that he was physically deprived or mistreated while at the police department, nor does the record reveal any type of physical deprivation. Moreover, there is no evidence that police

subjected appellant to threats or physical abuse, or deprived him of food, sleep, or medical treatment. See *State v. Cooey* (1989), 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 908.

**{¶101}** Accordingly, appellant has failed in his burden to demonstrate that the motion to suppress would have been successful. Accordingly, counsel's representation of appellant did not fall below an objective standard of reasonable representation.

3. Lesser-included Offenses/ Alternate Theories of Defense.

**{¶102}** a. Accident

**{¶103}** Appellant argues that trial counsel was ineffective for failing to argue that the shooting was accidental.

**{¶104}** Criminal liability is predicated upon two components: the voluntary commission of a prohibited act and the requisite mental culpability or mens rea required for the offense. R.C. 2901.21. Accident is not an affirmative defense. *State v. Poole* (1973), 33 Ohio St.2d 18, 294 N.E.2d 888. Rather, it is a factual defense that denies that the accused acted with the degree of culpability or mens rea required for the offense, when that involves purposeful conduct. *State v. Bayes* (Dec. 29, 2000), Clark App. No. 00CA0032. By raising the defense of accident defendant denies that the act was intentional or purposeful. *State v. Fears*, 86 Ohio St.3d 329, 715 N.E.2d 136, 1999-Ohio-111.

**{¶105}** Accident is defined as a "mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act." 4 Ohio Jury Instructions 75, Section 411.01(2).

Moreover, "[a]n accidental result is one that occurs unintentionally and without any design or purpose to bring it about." Id.

{¶106} A homicide is not excusable based on accident unless it appears from the evidence that at the time of the killing the offender was acting in a lawful manner and without negligence. *In re: Jackson* (1975) 45 Ohio App.2d 243, 344 N.E.2d 162; *State v. Palmer* (Dec. 27, 1988], Franklin App. No. 87AP-1124. A person causing the death of another while engaged in unlawful activity is criminally responsible even if the firearm discharges accidentally, *State v. Thrash* (1952), 93 Ohio App. 458, 113 N.E.2d 675; State v. Jones, 5th Dist. No.2005-CA-00076, 2006-Ohio-271 at ¶ 45.

{¶107} "[T]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *State v. Turner* (1997), Franklin App. No. 97APA05-709, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1496, 691 N.E.2d 1058 (finding sufficient evidence of intent to kill in firing a gun from an automobile at a group of individuals), quoting *State v. Brown* (1996), Cuyahoga App. No. 68761, dismissed, appeal not allowed, 77 Ohio St.3d 1468, 673 N.E.2d 135; see, also, *State v. Smith* (1993), 89 Ohio App.3d 497, 501, 624 N.E.2d 1114 (finding that pointing a gun at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill). *Banks,* supra, at ¶ 26.

{¶108} In the case at bar, the evidence is undisputed that appellant fired a Taurus .9 mm handgun in the direction of Deborah Tolley who was standing in close proximate to the barrel of the gun. The record contains no evidence to support a claim of accident.

{¶109} We find appellant has failed in his burden to demonstrate "counsel's representation fell below an objective standard of reasonableness" and further that he suffered prejudice from his counsel's performance. See, *Strickland*, 466 U. S., at 688; 691, 104 S.Ct. at 2064.

{¶110} b. Negligence

{¶111} Appellant next argues that trial counsel was ineffective for failing to argue that appellant actions in shooting Ms. Tolley were negligent.

{¶112} "Ohio law permits a trier of fact to consider three types of lesser offenses when determining a defendant's guilt: '(1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; or (3) lesser included offenses.' *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus, construing R.C. 2945.74 and Ohio Crim.R. 31(C)". *Shaker Heights v. Mosely*, 113 Ohio St.3d 329, 332, 2007-Ohio-2072 at ¶ 10, 865 N.E.2d 859, 862- 863.

{¶113} Negligent homicide," R.C. 2903.05, is defined as:

{¶114} "(A) No person shall negligently cause the death of another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code."

{¶115} "A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." R.C. 2901.22(D).

**{¶116}** The trial court would be required to instruct on negligent homicide only if the offense was a lesser-included offense of murder and then only if the evidence supported such a charge. See *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311; *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294; State v. Jacks (1989), 63 Ohio App.3d 200, 205, 578 N.E.2d 512, 515. In *State v. Koss* (1990), 49 Ohio St.3d 213, 551 N.E.2d 970, the Ohio Supreme Court held that negligent homicide is not a lesser-included offense of murder. Id. at paragraph four of the syllabus. As appellant was charged with attempted aggravated murder and attempted murder defense counsel could not have requested an instruction on negligent homicide. *State v. Wiley,* Franklin App. No. 03AP-340, 2004-Ohio-1008 at ¶ 32.

**{¶117}** We find appellant has failed in his burden to demonstrate "counsel's representation fell below an objective standard of reasonableness" and further that he suffered prejudice from his counsel's performance. See, *Strickland*, 466 U. S., at 688; 691, 104 S.Ct. at 2064.

**{¶118}** c. Reckless Homicide.

**{¶119}** Finally, appellant contends that trial counsel was ineffective for failing to argue that appellant's actions were reckless.

**{¶120}** R.C. 2903.041, the reckless-homicide statute, provides "(A) No person shall recklessly cause the death of another * * *." A definition of "recklessly" appears in R.C. 2901.22(C): "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." Reckless homicide is a lesser-

included offense of aggravated felony murder. *State v. Trimble*, 122 Ohio St.3d 297, 911 N.E.2d 242, 200-Ohio-2961 at ¶ 190.

{¶121} Even though an offense may be a lesser-included offense, a charge on the lesser offense is required "only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense." *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. The lesser-included-offense instruction is not warranted every time "some evidence" is presented to support the lesser offense. *State v. Shane* (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272. Rather, a court must find "sufficient evidence" to "allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." (Emphasis sics.) Id. at 632-633, 590 N.E.2d 272.

{¶122} There simply is no evidence upon which the jury could find that appellant recklessly attempted to kill Deborah Tolley. Appellant purchased a handgun on the day in question. Appellant fired that gun through the front door of Deborah Tolley's apartment. He then shot off the doorknob and locking mechanism and forced his way inside. He was standing a few feet away from Deborah when he raised the gun and fired one shot. Appellant told her that if she dropped her cell phone he would take her to the hospital. Then, with the gun still in his hand, he put his arm around Deborah and walked down three flights of stairs in the apartment building to his car. Based upon the record, there was no reasonable basis for the jury to find that appellant recklessly shot at Ms. Tolley.

**{¶123}** We find appellant has failed in his burden to demonstrate "counsel's representation fell below an objective standard of reasonableness" and further that he suffered prejudice from his counsel's performance.  See, *Strickland*, 466 U. S., at 688; 691, 104 S.Ct. at 2064.

**{¶124}** To summarize, we find none of the instances of ineffective assistance of counsel cited by appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial.  Having reviewed the record that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him.  The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

**{¶125}** Appellant's Fourth Assignment of Error is overruled.

**{¶126}** The judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. PATRICIA A. DELANEY

WSG:clw 0111

[Cite as *State v. Mobley*, 2011-Ohio-309.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                           :
                                        :
            Plaintiff-Appellee          :
                                        :
                                        :
-vs-                                    :        JUDGMENT ENTRY
                                        :
BRYAN L. MOBLEY                         :
                                        :
                                        :
            Defendant-Appellant         :        CASE NO. 2010-CA-0018


        For the reasons stated in our accompanying Memorandum-Opinion, the

judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.  Costs

to appellant.



                                    _____
                                    HON. W. SCOTT GWIN

                                    _____
                                    HON. SHEILA G. FARMER

                                    _____
                                    HON. PATRICIA A. DELANEY