[Cite as *State v. Wade*, 2019-Ohio-4565.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No.     CT2019-0007 |
| DEJON WADE | : | CT2019-0008 |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Muskingum County Court, Case Nos. TRC1803809 & TRC1803867

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      November 5, 2019

APPEARANCES:

For Plaintiff-Appellee

D. MICHAEL HADDOX
Prosecuting Attorney
BY: TAYLOR P. BENNINGTON
Assistant Prosecutor
27 North Fifth St., Box 189
Zanesville, OH  43701

For Defendant-Appellant

APRIL CAMPBELL
545 Metro Place South, Suite 100
Dublin, OH  43017

*Gwin, P.J.*

{¶1} Defendant-appellant Devon Wade ["Wade"] appeals his convictions and sentences after a bench trial in the Muskingum County Court.

*Facts and Procedural History*

{¶2} On Friday, June 26, 2018, at approximately 7:00 a.m., Trooper Corey Campbell of the Ohio State Highway Patrol was dispatched to a crash of a commercial vehicle into a guardrail, on Interstate 70 in Muskingum County, Ohio. The interaction was captured by Trooper Campbell's cruiser dash cam and microphone. [State's Exhibit 44].

{¶3} Upon arrival, the trooper observed where the truck had traveled off the roadway into the berm coming to rest upon the guardrail. On the video, the hazard lights on the truck can be seen flashing. Trooper Campbell and his female trainee walked to the cab of the truck, knocked on the door, and received no response. He then walked around the truck, assessing its damage. The trooper observed that a large set of tire marks in the mud and dirt had been tracked up through the truck's path, where it had actually left the pavement all along the side to where the guardrail was on the berm. The trooper further saw scraping around the side of the guardrail and determined the truck had hit the guardrail.

{¶4} The trooper knocked on the cab door again and received no response. He saw that the truck was unlocked. He then opened the door, yelled for anyone inside. When Trooper Campbell looked in the back seat, he saw Wade passed out in the sleeping berth. The trooper testified that his first reaction was that it was a medical situation. He called for a squad approximately four minutes after his arrival on the scene. (State's Exhibit 44 at 7:23).

{¶5} Upon entering the truck, the trooper observed a bottle of Grey Goose vodka on the floorboard between the driver seat and the passenger seat, approximately four feet from Wade. There was approximately one inch of vodka remaining in the bottle. The trooper also noticed a needle kit in the cab of the truck. Later, after an inventory of the truck was concluded, the needle kit was determined to be a tattoo kit; however, the observation of needles in the cab raised additional concerns for the trooper that this was a possible medical emergency. The trooper checked for a pulse, made sure Wade was breathing, and made sure Narcan was not necessary for the situation. The trooper was able to wake Wade, who was dazed and confused. Wade did not believe he had been in a crash, believed he was in Virginia, and could not recognize the officer as a state trooper.

{¶6} Wade was asked out of the truck and EMS arrived on scene. The trooper testified that he observed Wade to have constricted pupils, glassy eyes, and could smell alcoholic beverage odor about his breath. Trooper Campbell attempted to perform the HGN test. During the HGN test, Wade stared at the trooper in a daze and did not follow the pen back and forth, even though he was told several times to do so. The trooper testified the walk-and-turn test could not be performed due to safety concerns, as they were along the side of the interstate and because Wade did not have coordination or balance to perform anything alongside the busy roadway.

{¶7} After several minutes of confusion and argument, Wade eventually agreed to be treated by medical personnel. After he left in the ambulance, the trooper conducted the crash investigation on the scene and had the truck towed. As part of the crash investigation, the trooper described where Wade went off the roadway and where he struck the guardrail, until coming to a stop. He measured that the contact with the

guardrail was 564 feet.  Photographs were also taken showing damage to the guardrail, tracks where the truck had traveled off the pavement into dirt, striking the guardrail and the lines that traveled all the way down the berm from impact.  A photograph was taken of the right front side of the cab, where the truck had met the guardrail, and another photograph was taken showing the metal scraping that was consistent with the damage to the guardrail going down the side of the cab.

{¶8}    Trooper Campbell went to the hospital to speak with Wade.  While the trooper was attempting to ask Wade questions, Trooper Campbell testified that Wade "rolls over from eating his crackers and drinking his water and curls up in a fetal position and goes to sleep on me."  At that point, in time, Wade was not alert or able to walk on his own accord.  Hospital staff then assisted the trooper with getting Wade to his patrol car by putting Wade in a wheelchair.

{¶9}    Wade testified at trial that he was driving from New Jersey towards Illinois.  T. at 47.  Wade further testified that he pulled over because he was tired.  Wade testified that he remembers putting out three red hazard markers after he pulled the truck off the roadway.  T. at 49.  Wade had no explanation as to why the markers are not evident in the trooper's video.  T. at 49.

{¶10}    Before sleeping, Wade testified, "I had some drink."  T. at 50.  He was sitting on the side of the bed area at the time.  T. at 50-52.  He claimed the bottle of vodka had fallen off the ledge and spilled most of the contents on the floor.  T. at 53.  Wade further testified that he had struck a deer one to two days before this incident and that is what caused the damage to his truck.  T. at 53.  Wade presented photographs

that he testified had been taken before the incident in question showing the damage to the passenger side of the truck cab.  T. at 54; 59-61.

{¶11}  The trial court found Wade guilty of operating a commercial vehicle while having a measurable or detectable amount of alcohol or of a controlled substance in his blood, breath, or urine under R.C. 4506.15(A)(1); and a first-degree misdemeanor impaired while operating a commercial vehicle, R.C. 4506.15(A)(6).   *Case No. CRB1803809.*   He was also convicted of another alcohol-related first-degree misdemeanor impaired while operating a vehicle, R. C. 4511.19(A)(1)(A); a minor misdemeanor open-container offense, for the Grey Goose bottle the trooper found in Wade's cab; and a minor misdemeanor failure to control, due to his truck scraping a guardrail.  R.C. 4301.62; R.C. 4511.202.  *Case No. CRB1803867.*

{¶12}  For purposes of sentencing, the trial court found the OVI counts in *Case No, CRB1803809* and *Case No. CRB1803867* merged, and imposed a 60-day jail sentence on the OVI offense.

*Assignments of Error*

{¶13}  Wade raises three Assignments of Error.

{¶14}  "I. APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE APPELLANT'S TRIAL COUNSEL WAS DEFICIENT AT TRIAL, WITH RESULTING PREJUDICE.

{¶15}  "II.  BECAUSE  THE  STATE'S  EVIDENCE  WAS  LEGALLY INSUFFICIENT, HIS CONVICTIONS REQUIRE REVERSAL.

{¶16}  "III. THE EVIDENCE WEIGHED MANIFESTLY AGAINST CONVICTING WADE OF HIS FIRST-DEGREE MISDEMEANOR OFFENSES."

I.

{¶17}  In his First Assignment of Error, Wade argues that his trial counsel was ineffective.

{¶18}  The United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.
>
> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the

attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* 562 U.S. 86, 104-105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

**Failure to File a Motion to Suppress.**

{¶19} Wade first argues that his trial counsel was ineffective because he did not file a motion to suppress the warrantless entry of the truck by Trooper Campbell and because he contends that there was no evidence that Wade was driving the truck.

{¶20} Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–0448; *Accord, State v. Ortiz,* 5th Dist. Stark No. 2015CA00098, 2016-Ohio-354, ¶56. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA 130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06–CA–88, 2007–Ohio–3009, at ¶ 86. The defendant must further show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense

pursued. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *see, also, State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798 (2001), *citing State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

**ISSUE FOR APPEAL**

***A. Whether there is a reasonable probability a motion to suppress the warrantless entry and search of the truck would have been granted.***

{¶21} "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City v. Stuart, 547 U.S. at 403, 405-406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), quoting Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 209 (1978). *Accord, State v. Dunn*, 131 Ohio St.3d 325, 2012–Ohio–1008, 964 N.E.2d 1037, syllabus.

{¶22} In Ohio, the Supreme Court has held,

> The community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows a law-enforcement officer with objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury to effect a community-caretaking/emergency-aid stop.

*State v. Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, syllabus. In *Dunn*, the Ohio Supreme Court cited ABA Standards for Criminal Justice § 1–2.2 for the proposition that "police officers are duty-bound to provide emergency services to those who are in danger of physical harm." *Dunn*, ¶20. Accordingly, in the case at bar, the officers' actions must be examined in light of what actions were objectively reasonable for a law enforcement officer in the role of a community caretaker to take under the

circumstances. *Brigham City v. Stuart*, 547 U.S. at 403, 405-406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

{¶23} In the case at bar, Trooper Campbell received a dispatch to a commercial crash into a guardrail at milepost roughly 167 on I-70. T. at 7. Upon arrival, he observed a long track where the truck had travelled off the roadway into the berm. The hazard lights to the truck were flashing. Trooper Campbell shouted several times and received no response.

{¶24} In *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), the Supreme Court noted,

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as *community caretaking functions*, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

(Emphasis added.) Id. at 441, 93 S.Ct. 2523. The Supreme Court in *Michigan v. Fisher,* 588 U.S. 45, 130 S.Ct. 546, 175 L.Ed.2d 410, held, "Officers do not need

ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception. * * * [T]he test * * * [is] whether there was 'an objectively reasonable basis for believing' that medical attention was needed * * *." *Fisher,* 558 U.S. 45, 49, 130 S.Ct. 546, 175 L.Ed.2d 410. Thus, in order for police to invoke the exception, they need have only a reasonable basis to believe the occupant is in need of medical attention.

{¶25} Considering the totality of the circumstances, we find Trooper Campbell was justified in opening the door to the truck to determine what had happened to the driver. Upon seeing him passed out, Trooper Campbell's concern shifted toward determining whether Wade had a medical situation or was a possible overdose. T. at 10. The facts do provide reasonable, articulable facts upon which a reasonable person could conclude that Trooper Campbell was exercising his caretaking function. This falls within an exception to the Fourth Amendment.

**_B. Whether there is a reasonable probability a motion to suppress the evidence obtained by Trooper Campbell would have been granted because he lacked probable cause to believe Wade was operating the truck._**

{¶26} In the case at bar, the evidence does not clearly establish the point at which Wade was placed under arrest. Trooper Campbell did not transport Wade to the hospital. It does not appear that Wade was placed in handcuffs and taken to the hospital by the emergency personnel.

{¶27} In any event, Trooper Campbell encountered an accident scene with only one person present. That person was unresponsive, thinking he was in Virginia. Wade can be heard in the video telling Trooper Wade that he pulled the truck over because he

was tired and wanted to sleep. State's Exhibit 44 at 7:41. Thus, Trooper Campbell had probable cause to believe that Wade had driven the truck to its present location.

### C.  Whether failure to move for acquittal prejudiced Wade.

{¶28}  Wade next contends that his trial attorney's failure to make a Crim.R. 29 motion to acquit at the close of the state's case prejudiced him because there was no evidence that Wade had operated the truck and further there was no evidence that Wade had a "prohibited amount of alcohol in his blood, breath or urine." [Appellant's brief at 10].

{¶29}  The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury." *Dayton v. Rogers*, 60 Ohio St.2d 162, 163, 398 N.E.2d 781(1979), *overruled on other grounds, State v. Lazzaro,* 76 Ohio St.3d 261, 667 N.E.2d 384(1996). In a bench or nonjury trial, however, a defendant's not guilty plea serves as a Crim.R. 29 motion. Id.

{¶30}  In the case at bar, as previously noted, Wade can be heard in the video telling Trooper Wade that he pulled the truck over because he was tired and wanted to sleep. State's Exhibit 44 at 7:41. Accordingly, Trooper Campbell had probable cause to believe Wade had operated the truck.

{¶31}   R.C. 4506.15 provides in relevant part,

(A) No person who holds a commercial driver's license or commercial driver's license temporary instruction permit or who operates a motor vehicle for which a commercial driver's license or permit is required shall do any of the following:

* * *

(6) Drive a motor vehicle in violation of section 4511.19 of the Revised Code or a municipal OVI ordinance as defined in section 4511.181 of the Revised Code;

* * *

{¶32} Wade was also convicted of a violation of R.C. 4511.19(A)(1)(a). R.C. 4511.19 (A)(1)(a) prohibits operating a motor vehicle while "under the influence of alcohol, a drug of abuse, or a combination of them."

{¶33} The phrase "under the influence of intoxicating liquor" has been defined as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *Toledo v. Starks*, 25 Ohio App .2d 162, 166, 267 N.E.2d 824 (6th Dist. 1971). *See, also, State v. Steele* (1952), 95 Ohio App. 107, 111, 117 N.E.2d 617(3rd Dist. 1952) ("[B]eing 'under the influence of alcohol or intoxicating liquor' means that the accused must have consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess"). *See, State v. Henderson,* 5th Dist. Stark No. 2004-CA-00215, 2005-Ohio-1644 at ¶ 32; *State v. Ahmed,* 5th Dist. Stark No. 2007-CA-00049, 2008-Ohio-389, ¶26.

{¶34} The case law is in agreement that probable cause to arrest may exist, even without field sobriety tests results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking. *Oregon v. Szakovits*, 32 Ohio St.2d 271, 291 N.E.2d 742(1972); *Fairfield v. Regner*, 23 Ohio App.3d 79, 84, 491 N.E.2d 333(12th Dist. 1985); *State v. Bernard*, 20 Ohio App.3d 375, 376, 485 N.E.2d 783(9th Dist. 1985); *Westlake v. Vilfroy*, 11 Ohio App.3d 26, 27, 462 N.E.2d 1241(8th Dist. 1983); *State v. Judy,* 5th Dist. No. 2007-CAC-120069, 2008-Ohio-4520, ¶27. *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, (2004), ¶15.

{¶35} "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated. *Columbus v. Mullins* (1954), 162 Ohio St. 419, 421, 55 O.O. 240, 123 N.E.2d 422. *See, also, State v. McKee* (2001), 91 Ohio St.3d 292, 296, 744 N.E.2d 737." *State v. Schmitt*, 101 Ohio St.3d 79, 83, 2004-Ohio-37 at ¶ 12, 801 N.E.2d 446, 450(2004); *Accord, State v. Hackerdorn,* 5th Dist. Ashland No. 2004-CA-053, 2005-Ohio-1475, ¶ 67.

{¶36} In the case at bar, Trooper Campbell encountered a one-vehicle accident along a busy interstate highway. The driver admitted driving the truck to that location. The driver was unresponsive, had glassy eyes, could not follow basic requests, smelled of alcohol, could not stand or walk on his own. Wade did not know what State he was in and that Trooper Wade was an Ohio State Highway Patrol trooper. Trooper Campbell also found an opened, nearly consumed bottle of vodka within Wade's reach.

{¶37}  We find that under the totality of the circumstances Trooper Campbell had probable cause to arrest Wade for  operating the truck while "under the influence" in violation of R.C. 4511.19(A)(1)(a) and R.C. 4506.15(A)(6).

### D.  Trooper's testimony concerning intoxication.

{¶38}  Wade next argues that trial counsel was ineffective because she did not object to the testimony of Trooper Campbell concerning the "amount of per se level of alcohol in defendant's blood because the Trooper was not qualified as an expert." [Appellant's brief at 13].

{¶39}  As we have previously mentioned, "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated.  *Columbus v. Mullins* (1954), 162 Ohio St. 419, 421, 55 O.O. 240, 123 N.E.2d 422.  *See, also, State v. McKee* (2001), 91 Ohio St.3d 292, 296, 744 N.E.2d 737."  *State v. Schmitt*, 101 Ohio St.3d 79, 83, 2004-Ohio-37,801 N.E.2d 446(2004) at ¶12 450(2004); *Accord*, *State v. Hackerdorn,* 5th Dist. Ashland No. 2004-CA-053, 2005-Ohio-1475, ¶ 67.

{¶40}  We note that any error will be deemed harmless if it did not affect the accused's "substantial rights."  "Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman,* 386 U.S.18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705(1967).  Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal."  *State v. Lytle*, 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated on other grounds in* (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d

1154; *Accord, State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78; *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶177.

{¶41} We find the testimony of Trooper Campbell to be harmless beyond a reasonable doubt because there is no reasonable possibility that the testimony contributed to a conviction. Wade was convicted of driving the truck "while under the influence." The trial court merged the OVI counts, so Wade is unable to demonstrate that the trial court would have found him not guilty had the testimony not been admitted at trial.

### *E. Failure to provide discovery.*

{¶42} Wade next contends that his trial counsel was ineffective because she did not provide the prosecution with notice that his mother would testify concerning his hitting a deer with his truck prior to the day in question and to provide the state with photographs that bore a time-stamp of the damage. [Appellant's brief at 14].

{¶43} As the trial court noted, Wade himself could testify to the accident involving the deer, so excluding his mother was not prejudicial. T. at 5. Further, Wade was allowed to use photographs showing the damage to his truck; the photographs excluded were the same pictures but containing a time-stamp. T. at 55-59.

{¶44} We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." "Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman,* (1967), 386 U.S.18, 24, 87 S.Ct. 824, 828. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Lytle*, 48 Ohio St.2d

391, 2 O.O.3d 495, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated on other grounds in* (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154; *Accord, State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78; *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶177.

{¶45} In the case at bar, the trial judge was the trier of fact. The evidence excluded was merely cumulative to the admissible evidence. Wade is unable to demonstrate that had his mother testified and the photographs bearing the time-stamp been admitted into evidence at trial, the trial court would have found him not guilty

**CONCLUSION – ASSIGNMENTS OF ERROR I.**

{¶46} As there is not a reasonable probability that a motion to suppress either the search or the arrest, trial counsel was not ineffective in failing to file a motion to suppress.

{¶47} Wade can be heard telling Trooper Campbell that Wade operated the truck. The trooper was competent to testify to his observations of Wade and his opinion that Wade was under the influence.

{¶48} Sufficient evidence was presented to submit the case to the trier of fact. Therefore, Wade was not prejudiced by his attorney's failure to move for acquittal at the close of the state's case.

{¶49} The evidence concerning photographs bearing a time-stamp and the testimony of his mother are cumulative to evidence that was admitted. Accordingly, Wade cannot demonstrate that his substantial rights were violated by the exclusion.

{¶50} For the above reasons, Wade's First Assignment of Error is overruled in its entirety.

**{¶51}** In his Second Assignment of Error, Wade argues that there was insufficient evidence to convict him. In his Third Assignment of Error, Wade contends that the trial court's findings are against the manifest weight of the evidence.

**STANDARD OF APPELLATE REVIEW.**

*A. Sufficiency of the Evidence.*

**{¶52}** The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 104, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

**{¶53}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Walker*, at ¶ 30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 19. Thus, "on review for

evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, 'if believed, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" State *v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶ 31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 74.

ISSUE FOR APPEAL

*Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, "if believed, would convince the average mind of the defendant's guilt on each element of the crimes beyond a reasonable doubt."*

{¶54} Wade first contends that there was no evidence that he had a "prohibited amount of anything in his system." [Appellant's brief at 16].

{¶55} As previously noted, Wade was convicted of operating the truck "under the influence." In prosecutions for "under the influence" pursuant to R.C. 4511.19 (A)(1)(a), "the behavior of the defendant * * * is the crucial issue. The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under such section. It is the behavior of the defendant that is the crucial issue. *Newark v. Lucas*, 40 Ohio St.3d 100, 104, 532 N.E.2d 130 (1988).

{¶56} Sufficient evidence was produced at trial to support the inference that Wade's consumption of alcohol, a drug of abuse, or a combination of them on the night

in question adversely affected his actions, reactions, conduct, movement or mental processes or impaired his reactions to an appreciable degree, thereby lessening his ability to operate his vehicle on the night in question. No test results were necessary for a conviction of operating "under the influence.

{¶57} Next, Wade argues that there is no evidence that Wade was operating the truck. Wade admitted to Trooper Campbell at the scene that he had driven the truck. Wade admitted at trial that he had driven the truck and consumed alcohol while in the truck. A nearly empty bottle of vodka was recovered from inside the cab of the truck.

{¶58} Finally, Wade contends that there is no evidence that Wade drove the truck while impaired.

{¶59} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio St. 3d 259, 272, 574 N.E. 2d 492(1991) at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, 61 Ohio St .3d at paragraph one of the syllabus. Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks,* 61 Ohio St. 3d at 272, 574 N.E. 2d 492.

{¶60} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Wade had committed the crime of OVI in violation of R.C. 4511.19(A)(1)(a) and R.C. 4506.15(A)(6). We hold, therefore, that the state met its

burden of production regarding each element of the crime of OVI and, accordingly, there was sufficient evidence to submit the charges to the trier of fact and to support Wade's convictions.

*Manifest weight of the evidence.*

{¶61} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶62} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d

904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶63} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

ISSUE FOR APPEAL.

*B. Whether the judge clearly lost his way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶64} Wade argues that the evidence does not suggest that Wade drank before he drove the truck. [Appellant's brief at 17].

{¶65} The judge as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus*, superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶66} In the case at bar, the judge heard the witnesses and viewed the evidence. The judge further heard Wade's testimony and his attorney's arguments and explanations about his actions. The judge further reviewed the dash-cam video of the events as they occurred in real-time. Thus, a rational basis exists in the record for the judge's decision.

{¶67} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Wade's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided the matters before him. The judge heard the witnesses, evaluated the evidence, and was convinced of Wade's guilt. The judge neither lost his way nor created a miscarriage of justice in convicting Wade of OVI.

{¶68} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Wade was convicted.

{¶69} Wade's Second and Third Assignments of Error are overruled.

{¶70} The judgment of the Muskingum County Court is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur